IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ELOISA MARQUEZ, RICHARD MARTINEZ,
DESTINEY MARTINEZ and ANDRELLITA MARTINEZ**

      Plaintiffs,

                                                                       Case No.:

**OFFICER NICHOLAS LEVINE, in his official capacity as
a commissioned law enforcement officer and individual capacity,
OFFICER RYAN KUEHL, in his official capacity as a
Commissioned law enforcement officer and individual capacity,
And the NEW MEXICO STATE POLICE DEPARTMENT,**

      Defendants.

## NOTICE OF REMOVAL

      Pursuant to 28 U.S.C. § 1441(a) and 1446(a), Defendants Officer Nicholas Levine, Officer Ryan Kuehl and New Mexico State Police Department (as a division of the New Mexico Department of Public Safety) (*hereinafter referred to as* "State Defendants"), through their attorneys, SaucedoChavez, P.C. (Christopher T. Saucedo and Frank T. Apodaca), give Notice of Removal to this Court of the civil action filed in the First Judicial District Court for the State of New Mexico, County of Rio Arriba, Cause No. D-117-CV-2015-00276, by Murray Law Firm (Pilar Tirado Murray, Esq.) on behalf of Plaintiffs and as grounds therefore state:

      1.      On July 28, 2015, Plaintiffs filed a Complaint for Civil Rights Violations and Tort Claims (*hereinafter* referred to as "Complaint") with the First Judicial District Court. A copy of the Complaint is attached hereto as **Exhibit A**.

      2.      On August 12, 2015, Defendant "New Mexico State Police Department" was served with Plaintiff's Complaint. There is no record of service as to individual Defendants Levine

and Kuehl.

3. This Notice of Removal is timely as it is being filed within thirty (30) days after service on Defendant "New Mexico State Police Department

4. Pursuant to 28 U.S.C. § 1446(d), copies of the Notice of Removal will be promptly given to all adverse parties and a copy of the Notice of Removal will be filed with the Clerk of the First Judicial District Court, County of Rio Arriba, State of New Mexico.

5. The claims stated against State Defendants in this case are subject to the jurisdiction of this Court as follows:

 a. This Court has original jurisdiction because Plaintiff's Complaint is founded on a claim or right arising under the Constitution of the United States.

 b. An actual controversy exists because Plaintiff's Complaint alleges that County Defendants violated Plaintiff's federal constitutional rights.

6. This Court has federal question jurisdiction because Plaintiff has brought a civil action arising, in part, under the First and Fourth Amendments to the United States Constitution and seeks relief pursuant to 42 U.S.C. Section 1983.

7. A federal question appears on the face of Plaintiffs' Complaint. There is an actual controversy.

8. All Defendants consent to this removal.

9. Pursuant to Rule 81.1(a) of the Local Rules of the United States District Court for the District of New Mexico, Defendants will, within thirty (30) days, file a Notice of Filing of State Court Record and certified copies of the pleadings filed in the First Judicial District for the

State of New Mexico, County of Rio Arriba, in Cause No. CV-2015-00276.

    Respectfully submitted,

    **SAUCEDOCHAVEZ, P.C.**

    By:   /s/ Christopher T. Saucedo, Esq.
          Christopher T. Saucedo, Esq.
          Frank T. Apodaca, Esq.
    6565 Americas Parkway NE, Suite 920
    Albuquerque, New Mexico 87110
    (505) 338-3945
    csaucedo@saucedochavez.com
    fapodaca@saucedochavez.com

    *Attorneys for State Defendants*

I hereby certify that on this 8th day of September 2015, the foregoing was electronically served through the CM/ECF system to the following:

Pilar Tirado Murray
**Murray Law Firm**
P.O. Box 717
El Prado, New Mexico 88310
917-669-3610
jurisprudence@writeme.com

*Attorneys for Plaintiffs*


  /s/ Christopher T. Saucedo, Esq.
       Frank T. Apodaca

3

FILED IN MY OFFICE
DISTRICT COURT CLERK
7/28/2015 12:22:55 PM
STEPHEN T. PACHECO
Veronica Rivera

STATE OF NEW MEXICO
COUNTY OF RIO ARRIBA
FIRST JUDICIAL DISTRICT COURT

ELOISA MARQUEZ, RICHARD MARTINEZ,
DESTINEY MARTINEZ and ANDRELLITA MARTINEZ,

       Plaintiffs,                          No. D-117-CV-2015-00276

v.

OFFICER NICHOLAS LEVINE, in his official capacity as a
commissioned law enforcement officer and individual capacity,    **JURY DEMAND**
OFFICER RYAN KUEHL, in his official capacity as a
commissioned law enforcement officer and individual capacity,
and the NEW MEXICO STATE POLICE DEPARTMENT,

       Defendants.

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND TORT CLAIMS

COMES NOW Plaintiffs, by counsel of record, Pilar Tirado Murray, Esq. and for their complaint state:

I.    **INTRODUCTION**

1. Plaintiffs Eloisa Marquez, Richard Martinez, Destiney Martinez and Andrellita Martinez complain of violation of their civil rights guaranteed by the U.S. and New Mexico Constitutions committed by the New Mexico State Patrol and its duly appointed agents, Officer Nicholas Levine and Officer Ryan Kuehl. At all times material to the acts alleged herein, Defendants were acting under color of state law.

II.    **JURISDICTION, VENUE AND PARTIES**

2. Jurisdiction and venue are proper pursuant to the New Mexico Tort Claims Act, NMSA § 41-4-1 through 41-4-12 (1988), NMSA § 38-3-1(A) (1988), common law and Article VI, Section 13 of the New Mexico Constitution. A Notice of Claim was timely filed pursuant to NMSA § 41-4-16 (1988). All of the parties reside or do business in

EXHIBIT A

New Mexico and the acts complained of occurred exclusively within Santa Fe County by the border of Rio Arriba County.

3. Plaintiff Eloisa Marquez is the grandmother of Richard Martinez and a resident of Santa Cruz, New Mexico in Santa Fe County.

4. Plaintiff Richard Martinez is the grandson of Eloisa Marquez and a resident of Rio Arriba County.

5. Plaintiff Andrellita Martinez ("Andrea") is the sister of Richard Martinez and a resident of Rio Arriba County.

6. Plaintiff Destiney Martinez is the niece of Richard Martinez and a resident of Santa Fe County.

7. Defendant Nicholas Levine ("Defendant Levine") is an individual employed by the New Mexico State Police Department. At all times material to the facts alleged herein, Defendant Levine was working at the Española State Police Office, District Seven, Rio Arriba County, State of New Mexico. Defendant Levine was acting under the course and scope of his employment and under color of state law.

8. Defendant Ryan Kuehl ("Defendant Kuehl") is an individual employed by the New Mexico State Police Department. At all times material to the facts alleged herein, Defendant Kuehl was working at the Española State Police Office, District Seven, Rio Arriba County, State of New Mexico. Defendant Kuehl was acting under the course and scope of his employment and under color of state law.

9. Defendant New Mexico State Police Department ("NMSP") is a person within the meaning of the law and the employer and supervisor of Defendants Levine and Kuehl. At all times material hereto, NMSP was responsible for the conduct of these Defendants and for all claims against each of them while acting in their official capacity.

2

III.     FACTS

10. On or about August 6, 2013 at approximately 10:51 p.m. Defendant Levine positioned his police vehicle diagonally before 116 Camino De Roberto inside Santa Fe Public Housing just beyond the city limits of Española. He trained his spotlight and headlights in the direction of Plaintiffs Richard Martinez, Destiney Martinez and Eloisa Marquez.  A few moments before Plaintiffs Richard Martinez and Destiney Martinez has been sitting in the front seat of a parked vehicle inside their private fenced yard enjoying their evening.

11. Defendant Levine continued to train his search light in 86-year-old Eloisa Marquez's eyes, nearly causing her to fall.

12. Plaintiff Richard Martinez asked Defendant Levine to turn off the lights because they were blinding Plaintiff's grandmother.  "Can I help you?"  He asked Defendant Levine.  "Is there a problem?" and "Why are you doing that?"

13. Defendant Levine laughed, maintained his spotlight for another 20 seconds on the elderly woman's eyes, then turned his vehicle and drove to the end of Camino De Roberto.  He turned sharply, drove back at full speed and parked his squad car parallel to the family's home with his dashcam facing away from Plaintiffs.

14. Plaintiff Andrea Martinez was next door.  She noticed a spotlight focused on her grandmother's property.  She crossed over the fence to see what was going on.

15. Stepping away from his unit, Defendant Levine walked around the front of his squad car, entered Plaintiff Eloisa Marquez's private yard and asked Defendant Richard Martinez to identify himself.

16. Richard, who sustained a severe head injury as a teenager, properly identified himself and requested the officer's name.

17. Defendant Levine stepped closer to Plaintiff Richard Martinez.  "What's your name?" he demanded.  "What's your name?" he repeated while moving in on Plaintiff Richard Martinez.

3

18. Defendant Levine had no warrant, no reasonable suspicion, no probable cause and no lawful basis to stop, search or seize Plaintiff Richard Martinez.  This was not a traffic stop, a consensual stop or a "friendly conversation."

19. As Defendant Levine came closer and closer, Richard helplessly answered, "Richard. Richard Martinez."

20. Defendant Levine persisted.  "What's your last name there, Richard Martinez?" "What's your date of birth?"

21. Alarmed by Defendant Levine's unwarranted entry into their yard and insistent and aggressive behavior, Plaintiffs Destiney Martinez, Eloisa Martinez and Andrea Martinez implored Defendant Levine to leave Richard alone.  Plaintiff Destiney Martinez told Defendant Levine, "He hasn't done anything wrong!" Plaintiff Andrea Martinez said, "Can he (Richard) just go inside?"   And Plaintiff Eloisa Marquez, the owner of the property, said, "This is my property. I don't know what you are doing here."

22. Defendant Levine did not leave.  Instead, he closed the distance between himself and Plaintiff Richard Martinez pushing family members out of his way. "No," he said, "He's going to stay here for now."

23. Plaintiff Andrea Martinez approached Defendant Levine. Defendant Levine placed the back of his hand against her face and roughly shoved her aside.  Plaintiff Andrea Martinez screamed in terror and then ran into her house to alert her cousin, Cynthia Martinez.

24. Plaintiff Richard Martinez protested anxiously, "I don't have a fucking warrant" and "I didn't do nothing. Why are you over here harassing us?" Defendant Levine ignored him and continued to push the female members of his family around.  When Plaintiff Richard Martinez said,  "What are you trying to - - Stop." and "What the fuck!  You touch my grandma, I'm going to deck you!" Defendant Levine tasered (electrocuted) Plaintiff Richard Martinez without warning.

4

25. A few moments later Plaintiff Eloisa Marquez stepped forward and Defendant Levine tossed her to the ground. The force of her fall broke her wrist. She moaned in pain.

26. When Richard attempted to console his grandmother in Spanish and offered to cooperate with Defendant Levine, saying, "Don't touch my grandma," "Don't touch my sister" and "What are you doing, bro?" Defendant Levine grabbed Richard into a choke hold and forced him down. Richard yelled, "What did you do to me . . .?" His family yelled, "You just can't be right [in the head]. What the hell are you doing?" and "Stop it!" "Why are you doing that to him?"

27. Without warning or reasonable cause, Defendant Levine tasered Plaintiff Richard Martinez three or more times in the neck and shoulder at close range screaming, "Get down, Richard! Get down!" Multiple taser shots have been known to cause cardiac arrest in some victims, seizures and death in others.

28. Terrified and totally confused, Plaintiff Richard Martinez squirmed away and ran desperately towards the house. Defendant Levine followed, screaming and thrusting him up against a wall and shattering the flower pots by the doorway. Dropping his Taser, Defendant Levine pulled out his firearm and pointing it to Richard's head, yelled, "Do you want to die tonight?"

29. Richard went slack and slipped to the ground. Defendant Levine cuffed him, stepped on his head, then turned and commanded, "Richard, get over here!" "Richard!" "Richard!"

30. By then, Andrea had come out of her house. Defendant Levine tasered her and Destiney Martinez with one shot.

31. Cynthia Martinez had crossed over the fence to see what was going on.

32. When she and the others saw Defendant Levine handcuff Plaintiff Richard Martinez while he was lying prone on the ground, then stomp his foot on Richard's head they all shrieked.

33. Plaintiff Richard Martinez cried out, "Call the Sheriff!"

5

34. Overhearing Plaintiff Andrea Martinez dialing her phone, Defendant Levine quickly called for back-up to assist him.

35. Back-up arrived in the form of Defendant Officer Ryan Kuehl, Defendant Levine's NMSP partner.  Defendant Kuehl assisted Defendant Levine in restraining, handcuffing and placing Plaintiff Richard Martinez in Defendant Kuehl's squad car. Defendant Kuehl than called an ambulance for Plaintiff Eloisa Marquez.

36. Neither Defendant Levine nor Defendant Kuehl advised Plaintiff Richard Martinez of the reason for his arrest or read him his Miranda Rights.

37. A few moments later, Plaintiff Richard Martinez audibly gasped, "I can't breathe!" Officer Kuehl advised Defendant Levine that Plaintiff Richard Martinez "was in shock. He's having a seizure." Defendant Kuehl and Defendant Levine observed as Richard Martinez went into convulsions, involuntarily shaking, salivating over himself, going in and out of consciousness and sporadically crying, "I can't breathe!"

38. Defendant Kuehl counseled, "Breathe!  C'mon breathe!" and located a medic.

39. Defendant Levine remarked, "Richard, if you couldn't breathe, you wouldn't be talking."

40. While Plaintiff Richard Martinez was unable to breath and convulsing in the squad car, Defendants forcibly interfered with Plaintiff Andrea Martinez's ability to observe the condition of her brother, Plaintiff Richard Martinez.

41. While Plaintiff Richard Martinez was unable to breathe and convulsing in the squad car, Defendants forcibly interfered with Plaintiff Destiney Martinez's ability to check on the condition of her uncle, Plaintiff Richard Martinez.

42. At the apparent suggestion of an EMT who briefly questioned Plaintiff Martinez and determined he should be seen at the ER, Defendant Kuehl drove Plaintiff Richard Martinez to the hospital in his squad car.  During the ride, Plaintiff Richard Martinez repeatedly lost consciousness.

43. Meanwhile, Defendant Levine searched Plaintiff Eloisa Marquez's private yard for his missing glasses and continued to harass Plaintiff Richard Martinez's family members including Cynthia Martinez, a former dispatcher for the NMSP.

44. When Defendant Kuehl parked his squad car near the ER, Plaintiff Richard Martinez was slumped over and unable to stand.  He slid to the pavement and after a few minutes, was helped into a wheelchair and taken inside.

45. When the ambulance transporting Plaintiff Eloisa Marquez arrived at the ER. Plaintiff Marquez was treated for a painful and broken wrist.  Due to her diabetes, recovery is ongoing.

46. While in the hospital, Defendant Kuehl asked Plaintiffs, "You okay?  He (Levine) does this all the time."

47. Arriving at the hospital, Defendant Levine took photographs of himself.  He did not photograph any of the injuries he caused to Plaintiffs.

48. Defendant Levine approached Plaintiff Richard Martinez and continued to goad him by asking, "What's your date of birth?" "What's your date of birth?"

49. Defendant Levine then radioed his Sergeant and asked if Cynthia Martinez had worked as an NMSP dispatcher.  He named her as a witness and reported that the family had identified him as the initial aggressor.

50. Following the cursory evaluation in the ER, Plaintiff Richard Martinez was driven to the NMSP office in Española and placed in a holding cell.   His hands were handcuffed behind his back and he was attached to a center D-ring.

51. Defendant Levine then transported Plaintiff Richard Martinez to the Santa Fe County Detention Center. Defendant Levine charged Plaintiff Richard Martinez with *Concealing Identity* NMSA 30-22-03, a petty misdemeanor; *Disorderly Conduct* NMSA 30-20-1(A), a misdemeanor; *Resisting Arrest* NMSA 30-22-1(D), a misdemeanor; *Assault upon a Peace Officer* (Threat or Menacing Conduct) NMSA 30-22-21(A)(2), a

7

misdemeanor; and *Battery on a Peace Officer* NMSA 30-22-24, a 4th degree felony. Based on the alleged felony, Defendant Levine booked him on a no hold bond.

52. Plaintiff Richard Martinez spent the night in jail.

53. The next day, Plaintiff Martinez appeared for his arraignment. Defendant Levine failed to appear. The Court found no probable cause for Plaintiff Richard Martinez's arrest and dismissed all charges without prejudice.

54. At no time during the above-described events did Plaintiff Richard Martinez pose a threat to Defendant Levine or any other person.

55. At no time during the above-described events did Plaintiff Eloisa Marquez pose a threat to Defendant Levine or any other person.

56. At no time during the above-described events did Plaintiff Andrea Martinez pose a threat to Defendant Levine or any other person.

57. At no time during the above-described events did Plaintiff Destiney Martinez pose a threat to Defendant Levine or any other person.

58. The following month, the charges against Plaintiff Richard Martinez were re-filed in District Court. At arraignment, Defendant Levine failed to appear. The Court found no probable cause for Defendant Richard Martinez's arrest and dismissed the charges without prejudice.

59. As a direct and proximate cause of Defendant Levine's and Defendant Kuehl's actions and omissions described above, Plaintiff Richard Martinez suffered serious physical and psychological injuries, mental distress, fear, anxiety, emotional suffering and medical expenses, past and future. Plaintiff Richard Martinez is entitled to compensatory damages for the above-described injuries.

60. As a direct and proximate cause of Defendant Levine's conduct described above, Plaintiff Eloisa Marquez suffered serious physical and psychological injuries, mental distress, fear, anxiety, emotional suffering and medical expenses, past and future.

Plaintiff Eloisa Marquez is entitled to compensatory damages for the above-described injuries.

61. As a direct and proximate cause of Defendant Levine's conduct described above, Plaintiff Destiney Martinez suffered physical and psychological injuries, mental distress, fear, anxiety, emotional suffering and medical expenses, past and future. Plaintiff Destiney Martinez is entitled to compensatory damages for the above-described injuries.

62. As a direct and proximate cause of Defendant Levine's conduct described above, Plaintiff Andrea Martinez suffered physical and psychological injuries, mental distress, fear, anxiety, emotional suffering and medical expenses, past and future. Plaintiff Andrea Martinez is entitled to compensatory damages for the above-described injuries.

63. Throughout the incidents described above, Defendant Levine acted in bad faith, willfully, knowingly and purposefully with the specific intent to deprive Plaintiff Richard Martinez, Plaintiff Eloisa Marquez, Plaintiff Andrea Martinez and Plaintiff Destiney Martinez of their constitutional rights and further acted recklessly, wantonly and oppressively.  As a result of Defendant Levine's actions, the forenamed Plaintiffs are entitled to punitive damages.

64. From the time of his arrival on the scene, Defendant Kuehl who should have known better, acted in bad faith and was complicit in restraining Plaintiff Richard Martinez, endangering him through improper transport, and failing to investigate the crimes committed against him thereby, willfully, knowingly and purposefully depriving Plaintiff Richard Martinez of his constitutional rights.

IV. **CLAIMS**

**COUNT I -  TORTS OF ASSAULT AND BATTERY**

65. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

66. Defendant Levine battered Plaintiffs by grabbing, shoving, striking, tasering, and brutalizing Plaintiffs.

67. Defendant Levine's actions were without legal authority and constituted a criminal act under the laws of the State of New Mexico. *State v. Frazier*, 88 N.M. 103, 105, 537 P.2d 711, 713 (Ct. App. 1975) (an officer detaining a person without legal authority other than the bare facts of his employment as a peace officer is not in the lawful discharge of his duties.)

68. This use of force was excessive and unnecessary. At no time did Defendant Levine have reasonable suspicion or probable cause to believe that any of the Plaintiffs had or were about to commit a crime.

69. Defendant Levine's actions constituted assault and battery and any immunity he may have enjoyed for the consequences of his criminal action as an employee of NMSP is waived by NMSA 1978, Sections 41-4-12 (1988).

70. Defendant NMSP is liable for Defendant Levine's actions and omissions under the doctrine of respondeat superior.

**COUNT II – TORT OF FALSE IMPRISONMENT**

71. Plaintiffs Richard Martinez, Eloisa Marquez, Destiney Martinez and Andrea Martinez incorporate the preceding paragraphs as if fully set forth herein.

72. Plaintiffs have a right under the 4th Amendment to the U.S. Constitution and Art. II, § 10 of the New Mexico Constitution to be free from false imprisonment.

73. Defendant Levine discharged his Taser, brutalized, handcuffed and falsely imprisoned Plaintiff Richard Martinez.

74. Defendant Levine brutalized and falsely imprisoned Plaintiff Eloisa Marquez using his strength to immobilize her on the ground and deprive this frail and elderly woman of her ability to stand up on her own.

75. Defendant Levine discharged his Taser, brutalized and falsely imprisoned Plaintiff Andrea Martinez.

76. Defendant Levine discharged his Taser, brutalized and falsely imprisoned Plaintiff Destiney Martinez.

77. At no time did Defendant Levine have reasonable suspicion or probable cause to believe that any of the Plaintiffs had or were about to commit a crime.

78. Defendant Kuehl sanctioned and supported Defendant Levine's misconduct by assisting him in placing Plaintiff Richard Martinez into police custody. Defendant Kuehl did not release Plaintiff from custody, read Plaintiff his rights, apprise him of the reasons for his detention, remove his handcuffs or place Plaintiff in an ambulance when confronted with Plaintiff's inability to breathe, violent seizures, uncontrollable salivation, and repeated unconsciousness. Instead, Defendant Kuehl transported Plaintiff, a medically unstable individual, to the hospital in his squad car.

79. The detention of Plaintiffs Richard Martinez, Andrea Martinez, Destiney Martinez and Eloisa Marquez was not justified or privileged under law and thus, Defendant Levine's actions constituted false imprisonment. The protection of constitutional immunity for his illegal actions is waived under NMSA 1978 Section 41-4-12 (1988).

80. Defendant NMSP is liable for Defendants actions and omissions under the doctrine of respondeat superior.

**COUNT III – EXCESSIVE USE OF FORCE**

81. Plaintiffs Richard Martinez, Eloisa Marquez, Andrea Martinez and Destiney Martinez incorporate the preceding paragraphs as if fully set forth herein.

82. The above-named Plaintiffs each have a right under the New Mexico State Constitution, Article II, § 10 to be free from excessive force. The State Constitution's protections against warrantless searches and seizures have been interpreted more

11

expansively than those of the Fourth Amendment. *State v. Gomez*, 122 N.M. 777, 784, 932 P.2d 1,9 (1997).

83. The amount of force used to effectuate the seizures of these forenamed Plaintiffs was unreasonable and excessive under law, thus violating Plaintiffs' rights under the New Mexico Constitution to be free from and not subjected to excessive use of force.

84. At no time did Defendant Levine have reasonable suspicion or probable cause to believe that any of the plaintiffs had or were about to commit a crime.

85. The excessive use of force by Defendant Levine on Plaintiffs was not justified or privileged under law.  Defendant Levine does not enjoy the protection of constitutional immunity for his illegal actions due to waiver under NMSA 1978 Section 41-4-12 (1988).

86. Defendant NMSP is liable for Defendant Levine's actions and omissions under the doctrine of respondeat superior.

**COUNT IV – INVASION OF CURTILEDGE**

87. Plaintiff Eloisa Marquez incorporates the preceding paragraphs as if fully set forth herein.

88. Plaintiff Eloisa Marquez is the owner of the home on 116 Camino De Roberto.  Surrounding her home is a small fenced-in yard and a driveway.  The driveway is within the fence.

89. Curtiledge is the area close to the entry of the home where a homeowner has an expectation of privacy.  Curtiledge is extended the same protection against governmental intrusions as the home.  *State v. Hamilton, 2012-NMCA-115, ¶ 16, 290 P.3d 271.*

90. Defendant Levine's unauthorized entry into the curtiledge of Plaintiff Eloisa Marquez's home was a willful and unlawful violation of Plaintiff's reasonable

expectation in privacy as guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution and Art. II, §§ 4 and 10 of the New Mexico Constitution.

91. At no time did Defendant Levine have reasonable suspicion or probable cause to believe that any of the Plaintiffs had or were about to commit a crime.

92. The unlawful entry of Defendant Levine into the curtiledge of Plaintiff Eloisa Marquez's home was not justified or privileged under law. Defendant Levine does not enjoy the protection of constitutional immunity for his illegal actions due to waiver under NMSA 1978 Section 41-4-12 (1988).

93. Defendant NMSP is liable for Defendant Levine's actions and omissions under the doctrine of respondeat superior.

**COUNT V – FALSE ARREST/ILLEGAL SEIZURE**

94. Plaintiffs Richard Martinez, Eloisa Marquez, Andrea Martinez and Destiney Martinez incorporate the preceding paragraphs as if fully set forth herein.

95. Plaintiffs have a right under the Fourth Amendment of the U.S. Constitution and Article II, § 10 of the New Mexico State Constitution to be free from illegal searches and seizures.

96. At no time did Defendant Levine have reasonable suspicion or probable cause to believe that any of the Plaintiffs had or were about to commit a crime.

97. Defendant Levine trespassed onto Plaintiffs' property and through the use of words, physical touch, electrocution and threat of death illegally seized Plaintiff Richard Martinez, affecting his false arrest.

98. Defendant Levine trespassed onto Plaintiffs' property and through the use of words and physical touch illegally seized Plaintiff Eloisa Marquez.

99. Defendant Levine trespassed onto Plaintiff's property and through the use of words, physical touch and misuse of a Taser, illegally seized Plaintiff Andrea Martinez.

100. Defendant Levine trespassed onto Plaintiffs' property and through the use of words, physical touch and misuse of a Taser, illegally seized Plaintiff Destiney Martinez.

101. The illegal seizure of Plaintiffs was not justified or privileged under law. Defendant Levine does not enjoy the protection of constitutional immunity for his illegal actions due to waiver under NMSA 1978 Section 41-4-12 (1988).

102. Defendant NMSP is liable for Defendant Levine's actions and omissions under the doctrine of respondeat superior.

**COUNT VI – RETALIATORY ARREST**

103. Plaintiff Richard Martinez incorporates the preceding paragraphs as if fully set forth herein.

104. Plaintiff Richard Martinez has the right to free speech protected under the First Amendment to the U.S. Constitution. That right extends to interactions with police officers when profanity is involved. *State v. Wade*, 1983-NMCA-084, ¶ 17, 100 N.M. 152, 667 P.2d 459.

105. Plaintiff Richard Martinez exercised his First Amendment rights when he questioned Defendant Levine's attempts to verbally harass him and push around members of his family.

106. Defendant Levine's arrest of Plaintiff Richard Martinez was retaliatory and based on Plaintiff Richard Martinez's exercise of his right to free speech. Defendant Levine had no warrant, no probable cause and no reasonable suspicion that a crime had or would be committed when he demanded that Plaintiff Martinez repeatedly identify himself and walk towards his squad car.

107. Defendant Levine, a commissioned law enforcement officer, knew or should have known that his conduct was unlawful.

108. Defendant Levine's retaliatory arrest of Plaintiff Richard Martinez was not justified or privileged under law and Defendant Levine enjoys no protection of constitutional immunity for illegal actions due to waiver under NMSA 1978 Section 41-4-12 (1988).

109. Defendant NMSP is liable for Defendant Levine's actions and omissions under the doctrine of respondeat superior.

**COUNT VII – TORT OF MALICIOUS PROSECUTION**

110. Plaintiffs Richard Martinez, Eloisa Marquez, Destiney Martinez and Andrea Martinez incorporate the preceding paragraphs as if fully set forth herein.

111. Defendant Levine brought criminal charges against Plaintiff Richard Martinez.

112. Defendant Levine knowingly, intentionally and maliciously brought these charges against Plaintiff Richard Martinez and without probable cause in violation of New Mexico's prohibition against malicious prosecution.

113. The Court dismissed the charges brought by Defendant Levine.

114. Plaintiff Richard Martinez was unnecessarily restrained and incarcerated overnight as a result of Defendant Levine's malicious charges and was damaged thereby.

115. The arrest of Plaintiff Richard Martinez was not justified or privileged under law. Defendant Levine does not enjoy the protection of constitutional immunity for his illegal actions due to waiver under NMSA 1978 Section 41-4-12 (1988).

116. Defendant NMSP is liable for Defendant Levine's actions and omissions under the doctrine of respondeat superior.

**COUNT VIII – FAILURE TO TRAIN OR SUPERVISE**

117. Plaintiffs Richard Martinez, Eloisa Marquez, Destiney Martinez and Andrea Martinez incorporate the preceding paragraphs as if fully set forth herein.

118. Defendant NMSP maintains a custom, policy or procedure which does not adequately train or supervise its law enforcement personnel.

119. Defendant NMSP allows, condones or facilitates the promotion of false claims and constitutional violations under color of law.

120. Defendant NMSP had actual knowledge that Defendant Levine had used his status as a police officer to make false and retaliatory arrests and improper and excessive seizures during the performance of his official duties.

121. Defendant Kuehl had actual knowledge that Defendant Levine had used his status as a police officer to make false and retaliatory arrests and improper and excessive seizures during the performance of his official duties.

122. Despite having actual knowledge that Defendant Levine was inadequately trained and had a propensity to make false and retaliatory arrests and improper and excessive seizures in the performance of his official duties, Defendant NMSP failed to take reasonable steps to supervise its employees to prevent this misconduct.

123. Defendant NMSP knew or should have known that Defendant Levine was suffering from emotional and/or psychological problems that impaired his ability to function as an officer but failed to monitor him. Instead, Defendant NMSP and its employees ratified and tolerated his conduct.

124. The continued failure of Defendant NMSP to train or supervise its employees rises to the level of a custom, policy or practice and there is a direct and continued relationship between its custom, policy and practice and the trespass, battery, assault, improper seizure, false and retaliatory arrest and malicious use of force against one or more Plaintiffs in this case.

125. Plaintiffs have been damaged by the custom, policies and practices of Defendant NMSP in failing to train and supervise its law enforcement personnel and are entitled to damages as proven.

126. A JURY TRIAL is demanded on all counts and the $150 jury fee is attached.

WHEREFORE Plaintiffs requests the Court find for Plaintiffs and against Defendants on all tort, constitutional and common law claims award damages and punitive damages against Defendants and award reasonable attorney fees and costs to Plaintiffs under state law and as provided by 42 U.S.C. 1983.

**RESPECTFULLY SUBMITTED,**

*/s/Pilar Tirado Murray*
_____
Pilar Tirado Murray, Esq.
Attorney for Plaintiffs
P.O. Box 717
El Prado, New Mexico   87529
(917) 669-3610

**CERTIFICATE OF SERVICE**

Pursuant to Rule 1-004 NMRA, I certify that I filed the above pleading through Odyssey on the 27th day of July, 2015.

*/s/Pilar Tirado Murray*