IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELOISA MARQUEZ, RICHARD MARTINEZ,
DESTINEY MARTINEZ and ANDRELLITA MARTINEZ

Plaintiffs,                                    Case No.:  1:15 CV 00787 KBM-LF

vs.

OFFICER NICHOLAS LEVINE, in his official capacity as
a commissioned law enforcement officer and individual capacity,
OFFICER RYAN KUEHL, in his official capacity as a
Commissioned law enforcement officer and individual capacity,
And the NEW MEXICO STATE POLICE DEPARTMENT,

Defendants.

## DEFENDANT NICHOLAS LEVINE'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendant Nicholas Levine by and through his attorneys SaucedoChavez, P.C. (Christopher T. Saucedo and Frank T. Apodaca), submits his Answers to Plaintiffs' First Set of Interrogatories as follows:

### INITIAL STATEMENTS AND GENERAL OBJECTIONS

1. Defendant Levine's objections and responses to each interrogatory are based on information now known. Neither discovery nor preparation for trial in this matter has been completed by the parties. Accordingly, Defendant Levine reserves the right under Fed. R. Civ. Proc. 26(e)(1) to amend, modify, or supplement the following objections and responses if the answering party learns of new information.

2. Defendant Levine by providing answers and information to these interrogatories does not concede that such information is relevant, material, or admissible in evidence.

Defendant Levine objects to each discovery request as follows:

1

1. Defendant Levine objects to each interrogatory to the extent it seeks information by the attorney-client privilege or the attorney work product doctrine. To the extent that a document that has been identified as responsive is being withheld on the basis of privilege, Defendant will so state and will provide a privilege log identifying same in accordance with the requirements of Fed. R. Civ. Proc. 26(b)(5).

2. Defendant Levine objects to each interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense <u>and</u> proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." *Fed. R. Civ. Proc.* 26(b)(1) (emphasis added).

3. Defendant Levine objects to each interrogatory to the extent it is overly broad or unduly burdensome.

4. Defendant Levine objects to each interrogatory to the extent it is vague and ambiguous, and to the extent it does not describe the information sought with reasonable particularity.

5. Defendant Levine objects to each interrogatory to the extent it seeks information to which Plaintiff has equal or better access and which is in the control, custody, or possession of Plaintiff.

6. These objections shall apply to each and every interrogatory and shall be incorporated by reference as though fully set forth in each of the answers to interrogatories that follow below. A general objection may be specifically interposed for the purpose of

clarity in answer to any particular interrogatory; however, the failure to specifically incorporate any general objection may not be construed as a waiver of the objection.

7. Subject to and without waiving these objections, Defendant Levine provides the following answers.

**INTERROGATORY NO. 1:** State your name, address, occupation, title, and identify any trade or professional license ever held and educational background, including schools and universities attended and dates and degrees received.

**ANSWER:**

Nicholas Asher Levine
c/o Saucedo Chavez, P.C.
Agent, NMSP

Certified Law Enforcement Officer, New Mexico State Police.
Also previously a Certified Corrections Officer.

2005, High School Diploma, Quince Orchard High School, Gaithersburg, MD
2009, B.A. in Criminal Justice, Norwich University, Northfield, VT

**INTERROGATORY NO. 2**: State each address where you have lived, including city,

state and zip code, and the names, relationship and ages of any person(s) who have lived with

you there, within the past ten (10) years.

**ANSWER:**

Mr. Levine objects to this interrogatory as it is not "relevant to any party's claim or defense." Fed. R. Civ. Proc. 26(b)(1).

As well, with regard to the information requested, the information is protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, Mr. Levine objects to the release of personal information that is the subject of this Interrogatory.

Subject to and without waiving this objection and the general objections, Mr. Levine answers as follows:

2006-2009, Rockville, MD; Gaithersburg, MD; Northfield, VT (while attending college).
2009-present, Santa Fe, NM.

**INTERROGATORY NO. 3:** Describe your educational background, including where you attended high school, whether you attend any college or university, and with respect to each such institution, state the following: the name and address of the institution, the dates you attended the institution, and the degree or certificate you received from the institution.

**ANSWER:**

2005, High School Diploma, Quince Orchard High School, Gaithersburg, MD
2009, B.A. in Criminal Justice, Norwich University, Northfield, VT

**INTERROGATORY NO. 4**: State the first and last names of each of your employers for the last 10 (ten) years specifying:

(a) the name and title of every person who supervised you;

(b) your job title;

(c) your job description;

(d) dates of employment;

(e) date of and reason for separation;

(f) the last known email, address and telephone number for each of the individuals identified in response to (a) above.

**ANSWER:**

Mr. Levine objects to this Interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense <u>and</u> proportional to the needs of the case, considering . . . [5] the importance of the discovery in resolving the issues . . . ." *Fed. R. Civ. Proc.* 26(b)(1) (emphasis added).

Subject to and without waiving these objection and the general objections, Mr. Levine answers:

2009-Present, New Mexico Department of Public Safety
    Patrolman, responsible for general patrol, District 7 (09-13);
    Agent, detective and investigation work for Investigations Bureau in Santa Fe and Albuquerque (13-present)
    Sergeants Omar Sanchez, Arcenio Chavez, Nathon Barton, Scott McFall, Carolyn Lucero, Jerry Saldivar

2008-2009, Southern State Correctional Facility, Springfield, Vermont
    Corrections Officer, acting security within secured facility
    Josh Rutherford, Kyle Beckwith

2006-2012, Vermont and New Mexico Army National Guard,
    2d Lieutenant, 1st Lieutenant, Captain, performing duties in these roles as infantry officer, platoon leader, and executive officer
    Supervisors as identified in answer to Interrogatory 22.

2012-present, United States Army Reserve,
    Captain, acting in this role as a civil affairs Team Chief

Supervisors as identified in answer to Interrogatory 22.

**INTERROGATORY NO. 5:** State the date you were first employed as a New Mexico State police officer, the dates on which you were promoted and the positions to which you were promoted; your rank at the time of the incident described in the Complaint, and the date on which you attained that rank; the area of your assignment and job title at the time of the incident described in the Complaint; your hours of duty on the day of the incident described in the Complaint; and, if not explained in response to the foregoing, provide a list of all assignments and job titles you have held in the New Mexico State Police Department and state the reasons for transfer from or change of all assignments or job titles.

**ANSWER:**

With regard to officer personnel files, these files are protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, Mr. Levine objects to the production of officer personnel files to the extent they are responsive to this Interrogatory.

Subject to and without waiving this objection and the general objections, Mr. Levine, pursuant to Federal Rule of Civil Procedure 1-033(d)(1), refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Claim of Privilege Log for Personnel Files of Officer Levine | | |
|---|---|---|
| Description of Document | Claim of Privilege | Bates Stamp No. |
| Officer Nicholas Levine's Personnel File | Privilege claimed: Officer Levine's 14th Amendment right to privacy. Without waiving this objection, | DEFS PROD 219-489. |

| | State Defendants will produce these documents to Plaintiffs upon entry of a protective order. | |
|---|---|---|

Mr. Levine further answers:

In August 2009 I began at the New Mexico State Police Academy. On approximately December 31, 2009, I was commissioned as Patrol Officer, assigned to District 7, which was my rank and post as of August 6, 2013, the date of the incident in this case. In approximately January 2013 I became an Agent with the Department of Public Safety Investigations Bureau, a post I obtained on the basis of a selection process. As an Agent, I also had a collateral assignment as a member of the NMSP Tactical Team during the approximate time period August 2014 to August 2015. I ceased membership on the Tactical Team because I did not complete SWAT school. These dates are approximate and I would defer to personnel action forms and other documents in my personnel file for exact dates.

**INTERROGATORY NO. 6:** Identify the law enforcement agencies you have applied
to in the past.

**ANSWER:**

1. Los Angeles Police Department
2. Border Patrol
3. San Antonio Police Department
4. Diplomatic Security Service—State Department
5. FBI
6. Secret Service
7. NCIS

**INTERROGATORY NO. 7:** State whether you have received any special law enforcement or military training related to your current employment position, and, if so, state the nature and substance of the training you received, the inclusive dates of the period during which you received such training, the name and address of each specialized school or program you attended to receive said training, the identity of the entity that sponsored and/or provided the training, the names and titles of the instructors who offered the training, the titles of any and all courses attended and manuals used by you as part of the training, and the degree or certificate, if any, that you received from such specialized school or program.

**ANSWER:**

Defendant Levine objects to each interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action . . . [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1) (emphasis added).

Mr. Levine objects that the requested information is not relevant to the claims or defenses at issue in this matter. Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1299 (D.N.M. 2010 ("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training. The clearly established law requires the exclusion of any evidence regarding the violation of SOPs and training, because such evidence is irrelevant to Fourth–Amendment inquiry.").

Subject to and without waiving these objections and the general objections, Mr. Levine, pursuant to Federal Rule of Civil Procedure 1-033(d)(1), refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Document Description | Bates Stamp No. | Production |
|---|---|---|
| Levine's Training Records | DEFS PROD 692-730 | 11/23/15 Defs Initial Disclosures (2nd Supplemental) |

**INTERROGATORY NO. 8:** Have you ever been the subject of a criminal investigation, convicted of a crime, charged with a crime or named as a Respondent in a petition for a temporary or permanent restraining order? If so, please explain each instance and provide any information you have concerning each instance, such as a case number, when and where the investigation, crime or alleged crime took place.

**ANSWER:**

Mr. Levine objects to this Interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, . . . [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1). Specifically, in this regard, the use of Mr. Levine's history of criminal convictions as evidence are subject to the limitations of Fed. R. Evid. 609.

Mr. Levine objects as the information sought is not relevant to the alleged excessive use of force at issue in the present case. See, e.g., Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1290-91 (D.N.M. 2010) ("The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor test required to introduce 404(b) evidence. See Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir.2005) (holding that plaintiff failed to satisfy the first factor—that evidence of prior use of force was introduced for a proper purpose); Tanberg v. Sholtis, 401 F.3d 1151, 1167–68 (10th Cir.2005) (holding that plaintiffs failed to satisfy the second factor—that evidence of past use of force was relevant). In Chavez v. City of Albuquerque, the Tenth Circuit examined the admissibility of prior decisions of defendant Andrew Lehocky, a K–9 officer, to use his police service dog in cases which were unrelated to the plaintiff's claim. See 402 F.3d at 1046. The Tenth Circuit affirmed the decision of the Honorable William P. Johnson, United States District Judge for the District of New Mexico, to exclude evidence of "other incidents in which arrestees claimed [the defendant] used excessive force in deploying [the police service dog] Bart." Id. at 1046. The plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well as modus operandi and contended that the district court should admit the prior incidents under rule 404(b). See 402 F.3d at 1046. Concluding that the evidence was not offered for a proper purpose, and in upholding the district court's decision to exclude these prior incidents, the Tenth Circuit stated and explained that:Although [the plaintiff] argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that [the K–9 officer's] use of [police service dog] constituted a "modus operandi," none of these alternative bases for introducing 404(b)-type evidence was implicated on the facts presented. There was no claim or defense suggesting that [the K–9 officer] accidentally or mistakenly used the police dog. Indeed, it seems clear that he made a deliberate, conscious decision to do so. Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding the defendant's identity.Id.

(citations omitted). The Tenth Circuit also noted that the district court's conclusion "that such evidence was not relevant under the objective reasonableness standard of Graham v. Connor[, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ] ... is consistent with the decisions of several *1291 other federal appellate courts which have considered similar requests." 402 F.3d at 1047 n. 4.").

Subject to and without waiving this objection and the general objections, Mr. Levine answers that he has no history of criminal charges or convictions, and no TRO history, other than minor traffic citations pre-dating 2009, whose details he has no recollection of, except that he recalls having had traffic citations.

**INTERROGATORY NO. 9:** Have you ever filed a complaint or grievance against an employer? If so, please state the nature of the complaint or grievance filed, to whom this document was directed, the status of your complaint or grievance and what if any action was taken in response to its receipt.

**ANSWER:**

Mr. Levine objects to this Interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, . . . [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1).

Subject to and without waiving this objection and the general objections, Mr. Levine answers that as best he recalls he may have filed grievances relating to (1) applying for the DPS Investigations Bureau, which possibly was directed to Deputy Chief Martinez,; and (2) having difficulty getting a meeting with his Lieutenant, Isaac Valerio, to discuss personnel issues, which was directed to Lieutenant Valerio. As to these events Mr. Levine eventually was allowed to complete his application for Investigations Bureau, and he eventually secured a meeting with Lieutenant Valerio.

**INTERROGATORY NO. 10:** State whether, with respect to your employment in the New Mexico State Police Department (or as an officer in any other law enforcement position), you have ever been the subject of any internal complaint to any other governmental body, agency, board, or division, or law enforcement agency, including, but not limited to, the FBI, the Department of Justice, or any local prosecutor's office. If so, with respect to each such complaint, state the date of the complaint, the name of the person or persons filing the complaint, the person(s) or entity to whom the complaint was made, whether any hearings or investigations were held or conducted pursuant to the complaint, and what action, if any, was taken in connection with the complaint.

**ANSWER:**

Mr. Levine objects to this Interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, . . . [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1).

Mr. Levine objects that the requested information is not relevant to the claims or defenses at issue in this matter. Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1299 (D.N.M. 2010 ("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training. The clearly established law requires the exclusion of any evidence regarding the violation of SOPs and training, because such evidence is irrelevant to Fourth–Amendment inquiry.").

Mr. Levine objects as the information sought is not relevant to the alleged excessive use of force at issue in the present case. See, e.g., Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1290-91 (D.N.M. 2010) ("The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor test required to introduce 404(b) evidence. See Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir.2005) (holding that plaintiff failed to satisfy the first factor—that evidence of prior use of force was introduced for a proper purpose); Tanberg v. Sholtis, 401 F.3d 1151, 1167–68 (10th Cir.2005) (holding that plaintiffs failed to satisfy the second factor—that evidence of past use of force was relevant). In Chavez v. City of Albuquerque, the Tenth Circuit examined the admissibility of prior decisions of defendant Andrew Lehocky, a K–9 officer, to use his police service dog in cases which were unrelated to the plaintiff's claim. See 402 F.3d at 1046. The Tenth Circuit affirmed the decision of the Honorable William P. Johnson, United States District Judge for the District of New Mexico, to

exclude evidence of "other incidents in which arrestees claimed [the defendant] used excessive force in deploying [the police service dog] Bart." Id. at 1046. The plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well as modus operandi and contended that the district court should admit the prior incidents under rule 404(b). See 402 F.3d at 1046. Concluding that the evidence was not offered for a proper purpose, and in upholding the district court's decision to exclude these prior incidents, the Tenth Circuit stated and explained that: Although [the plaintiff] argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that [the K–9 officer's] use of [police service dog] constituted a "modus operandi," none of these alternative bases for introducing 404(b)-type evidence was implicated on the facts presented. There was no claim or defense suggesting that [the K–9 officer] accidentally or mistakenly used the police dog. Indeed, it seems clear that he made a deliberate, conscious decision to do so. Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding the defendant's identity.Id. (citations omitted). The Tenth Circuit also noted that the district court's conclusion "that such evidence was not relevant under the objective reasonableness standard of Graham v. Connor[, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ] ... is consistent with the decisions of several *1291 other federal appellate courts which have considered similar requests." 402 F.3d at 1047 n. 4.").

Subject to and without waiving this objection and the general objections, Mr. Levine answers, to his knowledge, no.

**INTERROGATORY NO. 11**: State whether you have ever been the subject of any investigation or other inquiry or review by the New Mexico State Police Department or any, unit, division, or agency thereof (including but not limited to the Internal Affairs Division). If so, with respect to each such investigation, inquiry, or review, provide its inclusive date; describe its nature and substance; identify the person or persons who initiated it and the person or persons who conducted it; state whether any hearings or other proceedings occurred; and describe any resulting ruling, decision or action.

**ANSWER:**

Mr. Levine objects to this Interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, . . . [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1).

Mr. Levine objects that the requested information is not relevant to the claims or defenses at issue in this matter. Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1299 (D.N.M. 2010 ("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training. The clearly established law requires the exclusion of any evidence regarding the violation of SOPs and training, because such evidence is irrelevant to Fourth–Amendment inquiry.").

Mr. Levine objects as the information sought is not relevant to the alleged excessive use of force at issue in the present case. See, e.g., Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1290-91 (D.N.M. 2010) ("The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor test required to introduce 404(b) evidence. See Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir.2005) (holding that plaintiff failed to satisfy the first factor—that evidence of prior use of force was introduced for a proper purpose); Tanberg v. Sholtis, 401 F.3d 1151, 1167–68 (10th Cir.2005) (holding that plaintiffs failed to satisfy the second factor—that evidence of past use of force was relevant). In Chavez v. City of Albuquerque, the Tenth Circuit examined the admissibility of prior decisions of defendant Andrew Lehocky, a K–9 officer, to use his police service dog in cases which were unrelated to the plaintiff's claim. See 402 F.3d at 1046. The Tenth Circuit affirmed the decision of the Honorable William P. Johnson, United States District Judge for the District of New Mexico, to exclude evidence of "other incidents in which arrestees claimed [the defendant] used excessive force in deploying [the police service dog] Bart." Id. at 1046. The plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well as modus operandi and contended that the district court should admit the prior incidents under rule 404(b). See 402 F.3d

at 1046. Concluding that the evidence was not offered for a proper purpose, and in upholding the district court's decision to exclude these prior incidents, the Tenth Circuit stated and explained that:Although [the plaintiff] argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that [the K–9 officer's] use of [police service dog] constituted a "modus operandi," none of these alternative bases for introducing 404(b)-type evidence was implicated on the facts presented. There was no claim or defense suggesting that [the K–9 officer] accidentally or mistakenly used the police dog. Indeed, it seems clear that he made a deliberate, conscious decision to do so. Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding the defendant's identity.Id. (citations omitted). The Tenth Circuit also noted that the district court's conclusion "that such evidence was not relevant under the objective reasonableness standard of <u>Graham v. Connor</u>[, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ] ... is consistent with the decisions of several *1291 other federal appellate courts which have considered similar requests." 402 F.3d at 1047 n. 4.").

To establish municipal liability under § 1983, a plaintiff must first demonstrate, inter alia, that an officer committed an underlying constitutional violation. <u>Saenz v. Lovington Mun. Sch. Dist.</u>, No. CIV 14-1005 JB/SMV, 2015 WL 2226021, at *19 (D.N.M. Apr. 30, 2015). Unless and until such a determination has been made, the burden of indulging onerous discovery that would seek, over such a lengthy period of time, every event of complaint for unlawful arrest/excessive force, for the entire state of New Mexico, is not justified.

Confronted with this threshold legal issue, that is yet to be determined in Plaintiffs' favor, and particularly under the new revisions to Rule 26, Mr. Levine respectfully submits that the Court, in the interest of proportionality, should stay discovery on Plaintiffs' municipal liability claim, until dispositive motions as to qualified immunity have been filed and adjudicated. This is in keeping with the nature of the doctrine of qualified immunity itself. <u>Martin v. City of Albuquerque</u>, No. CIV 14-1011 JB/GBW, 2015 WL 7803616, at *7 (D.N.M. Nov. 9, 2015) ("Once the qualified immunity defense has been raised, the Court must not let a plaintiff use discovery as a fishing expedition to flesh out the merits of his claim.").

Alternatively, Mr. Levine respectfully submits that the Court, in the interest of proportionality, should bifurcate Plaintiffs' municipal liability claim to structure discovery in a manner that appropriately phases the discovery burdens imposed upon public defendants, as here, until such time as an underlying constitutional violation has been determined. <u>See, e.g., Ricciuti v. New York City Transit Authority</u>, 796 F.Supp. 84, 85-86 (S.D.N.Y. 1992) ("While the plaintiffs suggest that their discovery requests will not be as expansive as defendants assert, defendants note that bifurcation may also prevent a prolonged examination of government policy and custom before trial. Judging by the pleadings, such an examination could be a time-consuming and elaborate affair: plaintiffs recite numerous incidents highlighting the improper training of officers, two of which occurred in 1975. If the Court orders bifurcation and the first trial disposes of the claims against the municipalities, **this exhaustive discovery would indeed be avoided.**")(emphasis added). <u>Masi v. City of New York</u>, 1999 WL 688453 at *1 (S.D.N.Y. 1999) ("The economies to be achieved by **limiting discovery** to the incident in question and its sequelae are apparent, and have been set forth comprehensively by Judge Haight in <u>Ricciuti</u>, 796 F.Supp. at 86. I agree with him.") (emphasis added); <u>Morales v. Irizarry</u>, No.

95CIV.5068(AGS)(HBP), 1996 WL 609416, at *2 (S.D.N.Y. Oct. 22, 1996) ("Notwithstanding plaintiff's insistence to the contrary, the issue of municipal liability engages matters going well beyond whether plaintiff['s rights were violated by the individual defendants on the date alleged.] ("Moreover, it is possible that if the case is tried only on the issue of individual defendant liability, there may be no need to consider the issue of municipal liability regardless of the outcome of such a trial. If the verdict is in favor of the individual defendants, that ends the case; if the verdict is in favor of plaintiff, the City has a substantial incentive to settle the case. The case will be tried more quickly if **discovery** and trial are so limited.")(emphasis added).

Mr. Levine objects to this Interrogatory because Plaintiffs have not alleged a failure to discipline claim in their Complaint, so the portion of this Interrogatory addressing discipline is not relevant for that separate reason.

Mr. Levine objects to this Interrogatory to the extent it is overly broad and unduly burdensome on the basis of the factors articulated above.

With regard to the internal affairs file concerning the incident underlying this case (Case No. 13-181250), and officer personnel files, these files are protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, Mr. Levine objects to the production of Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 or officer personnel files to the extent they are responsive to this Interrogatory.

Subject to and without waiving these objections and the general objections, Mr. Levine refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| No. | Description of Document | Claim of Privilege | Bates Stamp No. |
|---|---|---|---|
| | **Claim of Privilege Log for** **Department of Public Safety Internal Affairs Investigation** **of Complaint as to Case No. 13-181250** | | |
| 1 | Copies of Intra-Departmental Correspondence from Captain Jimenez, Lieutenant Maestas, Officer Levine, Officer Kuehl | Privilege claimed: Officer Ryan Levine's 14th Amendment right to privacy. Without waiving this objection, | DEFS PROD 6-15; 127-128; 132-141 |

| | | State Defendants will produce these documents to Plaintiffs upon entry of a protective order. | |
|---|---|---|---|

| Claim of Privilege Log for Personnel Files of Officer Levine | | |
|---|---|---|
| Description of Document | Claim of Privilege | Bates Stamp No. |
| Officer Nicholas Levine's Personnel File | Privilege claimed: Officer Levine's 14th Amendment right to privacy. Without waiving this objection, State Defendants will produce these documents to Plaintiffs upon entry of a protective order. | DEFS PROD 385-388, 393-394 |

**INTERROGATORY NO. 12:** State whether you have been the subject of any disciplinary action by the New Mexico State Police Department (or any other law enforcement agency that you have worked for) and if so, describe each disciplinary action you have received, the reason for the disciplinary action, the nature of the action taken and the name and rank of the individual(s) who administered said action.

**ANSWER:**

Mr. Levine objects to this Interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, . . . [5] the importance of the discovery in resolving the issues, . . .." Fed. R. Civ. Proc. 26(b)(1).

Mr. Levine objects that the requested information is not relevant to the claims or defenses at issue in this matter. Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1299 (D.N.M. 2010 ("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training. The clearly established law requires the exclusion of any evidence regarding the violation of SOPs and training, because such evidence is irrelevant to Fourth–Amendment inquiry.").

Mr. Levine objects as the information sought is not relevant to the alleged excessive use of force at issue in the present case. See, e.g., Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1290-91 (D.N.M. 2010) ("The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor test required to introduce 404(b) evidence. See Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir.2005) (holding that plaintiff failed to satisfy the first factor—that evidence of prior use of force was introduced for a proper purpose); Tanberg v. Sholtis, 401 F.3d 1151, 1167–68 (10th Cir.2005) (holding that plaintiffs failed to satisfy the second factor—that evidence of past use of force was relevant). In Chavez v. City of Albuquerque, the Tenth Circuit examined the admissibility of prior decisions of defendant Andrew Lehocky, a K–9 officer, to use his police service dog in cases which were unrelated to the plaintiff's claim. See 402 F.3d at 1046. The Tenth Circuit affirmed the decision of the Honorable William P. Johnson, United States District Judge for the District of New Mexico, to exclude evidence of "other incidents in which arrestees claimed [the defendant] used excessive force in deploying [the police service dog] Bart." Id. at 1046. The plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well as modus operandi and contended that the district court should admit the prior incidents under rule 404(b). See 402 F.3d at 1046. Concluding that the evidence was not offered for a proper purpose, and in upholding the district court's decision to exclude these prior incidents, the Tenth Circuit stated and explained that:Although [the plaintiff] argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that [the K–9 officer's] use of [police service dog] constituted a "modus operandi," none of these alternative bases for

introducing 404(b)-type evidence was implicated on the facts presented. There was no claim or defense suggesting that [the K–9 officer] accidentally or mistakenly used the police dog. Indeed, it seems clear that he made a deliberate, conscious decision to do so. Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding the defendant's identity.Id. (citations omitted). The Tenth Circuit also noted that the district court's conclusion "that such evidence was not relevant under the objective reasonableness standard of Graham v. Connor[, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ] ... is consistent with the decisions of several *1291 other federal appellate courts which have considered similar requests." 402 F.3d at 1047 n. 4.").

To establish municipal liability under § 1983, a plaintiff must first demonstrate, inter alia, that an officer committed an underlying constitutional violation. Saenz v. Lovington Mun. Sch. Dist., No. CIV 14-1005 JB/SMV, 2015 WL 2226021, at *19 (D.N.M. Apr. 30, 2015). Unless and until such a determination has been made, the burden of indulging onerous discovery that would seek, over such a lengthy period of time, every event of historical discipline of Mr. Levine is not justified.

Confronted with this threshold legal issue, that is yet to be determined in Plaintiffs' favor, and particularly under the new revisions to Rule 26, Mr. Levine respectfully submits that the Court, in the interest of proportionality, should stay discovery on Plaintiffs' municipal liability claim, until dispositive motions as to qualified immunity have been filed and adjudicated. This is in keeping with the nature of the doctrine of qualified immunity itself. Martin v. City of Albuquerque, No. CIV 14-1011 JB/GBW, 2015 WL 7803616, at *7 (D.N.M. Nov. 9, 2015) ("Once the qualified immunity defense has been raised, the Court must not let a plaintiff use discovery as a fishing expedition to flesh out the merits of his claim.").

Alternatively, Mr. Levine respectfully submits that the Court, in the interest of proportionality, should bifurcate Plaintiffs' municipal liability claim to structure discovery in a manner that appropriately phases the discovery burdens imposed upon public defendants, as here, until such time as an underlying constitutional violation has been determined. See, e.g., Ricciuti v. New York City Transit Authority, 796 F.Supp. 84, 85-86 (S.D.N.Y. 1992) ("While the plaintiffs suggest that their discovery requests will not be as expansive as defendants assert, defendants note that bifurcation may also prevent a prolonged examination of government policy and custom before trial. Judging by the pleadings, such an examination could be a time-consuming and elaborate affair: plaintiffs recite numerous incidents highlighting the improper training of officers, two of which occurred in 1975. If the Court orders bifurcation and the first trial disposes of the claims against the municipalities, this exhaustive discovery would indeed be avoided.")(emphasis added). Masi v. City of New York, 1999 WL 688453 at *1 (S.D.N.Y. 1999) ("The economies to be achieved by limiting discovery to the incident in question and its sequelae are apparent, and have been set forth comprehensively by Judge Haight in Ricciuti, 796 F.Supp. at 86. I agree with him.") (emphasis added); Morales v. Irizarry, No. 95CIV.5068(AGS)(HBP), 1996 WL 609416, at *2 (S.D.N.Y. Oct. 22, 1996) ("Notwithstanding plaintiff's insistence to the contrary, the issue of municipal liability engages matters going well beyond whether plaintiff['s rights were violated by the individual defendants on the date alleged.] ("Moreover, it is possible that if the case is tried only on the issue of individual defendant liability, there may be no need to consider the issue of municipal liability regardless of the

outcome of such a trial. If the verdict is in favor of the individual defendants, that ends the case; if the verdict is in favor of plaintiff, the City has a substantial incentive to settle the case. The case will be tried more quickly if **discovery** and trial are so limited.")(emphasis added).

Mr. Levine objects to this Interrogatory because Plaintiffs have not alleged a failure to discipline claim in their Complaint, so the portion of this Interrogatory addressing discipline is not relevant for that separate reason.

Mr. Levine objects to this Interrogatory to the extent it is overly broad and unduly burdensome on the basis of the factors articulated above.

With regard to the internal affairs file concerning the incident underlying this case (Case No. 13-181250), and officer personnel files, these files are protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, Mr. Levine objects to the production of Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 or officer personnel files to the extent they are responsive to this Interrogatory.

Subject to and without waiving these objections and the general objections, Mr. Levine states that the only time he has been disciplined as an NMSP officer is addressed in the records, and refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Claim of Privilege Log for Personnel Files of Officer Levine | | |
|---|---|---|
| Description of Document | Claim of Privilege | Bates Stamp No. |
| Officer Nicholas Levine's Personnel File | Privilege claimed: Officer Levine's 14th Amendment right to privacy. Without waiving this objection, State Defendants will produce these documents to Plaintiffs upon entry of a protective order. | DEFS PROD 393-394 |

**INTERROGATORY NO. 13:** State whether you had ever encountered Plaintiff Richard Martinez before the date of the incident that is the subject of this lawsuit.

**ANSWER:**

No, to the best of my recollection.

**INTERROGATORY NO. 14:** Describe your version of the incident detailed in the Plaintiffs' Complaint. Your description should include, but not be limited to the following:

(a) The circumstances in which you encountered Plaintiffs and the reasons why you went to the location of the incident described in the Complaint;

(b) The names and badge numbers of all New Mexico State Police officers present during or having anything to do with the incident described in the Complaint;

(c) The names, addresses and phone numbers of any New Mexico State Police employees or agents contacted immediately prior to, contemporaneous with or after the incident described in the Complaint;

(d) The names, addresses, emails and telephone numbers of any and all witnesses to the events that transpired at 116 Camino de Roberto on the evening of August 6, 2013;

(e) Any and all reasons why you detained Plaintiff Richard Martinez;

(f) Whether and why you used physical force against Plaintiffs;

(g) Whether Plaintiffs used physical force against you;

(h) The length of time you held Plaintiff Richard Martinez in your custody;

(i) The manner in which you held Plaintiff Richard Martinez in custody;

(j) Where you held Plaintiff Richard Martinez in custody;

(k) Whether and why you initiated charges against plaintiff Richard Martinez; and

(l) Your understanding of the disposition of the charges brought against Plaintiff Richard Martinez.

**ANSWER:**

Mr. Levine objects to this Interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, . . . [3] the parties' relative access to relevant information . . . [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1). In connection therewith, Mr. Levine further states that Plaintiffs can ascertain the disposition of the charges against Richard Martinez in the same way Mr. Levine would, by referring to the docket of the case available on nm.courts.com.

With regard to the internal affairs file concerning the incident underlying this case (Case No. 13-181250), these files are protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, Mr. Levine objects to the production of Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 to the extent it is responsive to this Interrogatory.

Mr. Levine objects to this Interrogatory to the extent it requests information equally available to Plaintiffs through the "nmcourts" web site.

Subject to and without waiving these objections and the general objections, Mr. Levine, pursuant to Federal Rule of Civil Procedure 1-033(d)(1), refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Document Description | Bates Stamp No. | Production |
|---|---|---|
| Department of Public Safety's Use of Force Form dated 8/6/2013 | DEFS PROD 16-18; 122-124 | 10/26/15 Defs Initial Disclosures |
| Statement of Probable Cause, New Mexico Supplemental Police Report | DEFS PROD 26-32 | 10/26/15 Defs Initial Disclosures |
| Copies of Police Report 2013-14195. | DEFS PROD 59-83; 142-165 | 10/26/15 Defs Initial Disclosures |
| Levine Video and Audio Recordings | DEFS PROD 658 | 11/13/15 Defs Initial Disclosures (1st Supplemental) |

| | | |
|---|---|---|
| Kuehl Video and Audio Recordings | DEFS PROD 659 | 11/13/15 Defs Initial Disclosures (1st Supplemental) |

<table>
<tr><td colspan="4"><strong>Claim of Privilege Log for<br>Department of Public Safety Internal Affairs Investigation<br>of Complaint as to Case No. 13-181250</strong></td></tr>
<tr><td>No.</td><td>Description of Document</td><td>Claim of Privilege</td><td>Bates Stamp No.</td></tr>
<tr><td>1</td><td>Copies of Intra-Departmental Correspondence from Officer Levine, Officer Kuehl</td><td>Privilege claimed: Officer Ryan Levine's 14th Amendment right to privacy.<br><br>Without waiving this objection, State Defendants will produce these documents to Plaintiffs upon entry of a protective order.</td><td>DEFS PROD 9-15; 135-141</td></tr>
</table>

**INTERROGATORY NO. 15**: Identify by name, address, email, facsimile and phone number all witnesses to the incident described in the Complaint, or any circumstances outlined in Interrogatory No. 15, *supra*, to whom you, or any agent of the New Mexico State Police Department (including your attorneys) have spoken with respect to the incident described in the Complaint, and, for each such witness, described the account given by the witness as to the incident described in the Complaint, or the circumstances outlined in Interrogatory No. 15, *supra*, and state whether the witness has provided a statement in any form.

**ANSWER:**

Mr. Levine objects to this Interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case, considering . . . [3] the parties' relative access to relevant information . . . and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1). In connection therewith, Mr. Levine further states that Plaintiffs were witnesses to the incident and know whether they have given statements.

With regard to the internal affairs file concerning the incident underlying this case (Case No. 13-181250), these files are protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, Mr. Levine objects to the production of Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 to the extent it is responsive to this Interrogatory.

Mr. Levine further objects to this Interrogatory to the extent it vague and confusing and unintelligible, in that it is self-referential, and thus it is unanswerable as asked.

Subject to and without waiving these objections and the general objections, Mr. Levine, pursuant to Federal Rule of Civil Procedure 1-033(d)(1), refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Document Description | Bates Stamp No. | Production |
|---|---|---|
| Department of Public Safety's Use of Force Form dated 8/6/2013 | DEFS PROD 16-18; 122-124 | 10/26/15 Defs Initial Disclosures |
| Statement of Probable Cause, New Mexico Supplemental Police Report | DEFS PROD 26-32 | 10/26/15 Defs Initial Disclosures |
| Copies of Police Report 2013-14195. | DEFS PROD 59-83; 142-165 | 10/26/15 Defs Initial Disclosures |
| Levine Video and Audio Recordings | DEFS PROD 658 | 11/13/15 Defs Initial Disclosures (1st Supplemental) |
| Kuehl Video and Audio Recordings | DEFS PROD 659 | 11/13/15 Defs Initial Disclosures (1st Supplemental) |

| **Claim of Privilege Log for**<br>**Department of Public Safety Internal Affairs Investigation**<br>**of Complaint as to Case No. 13-181250** | | | |
|---|---|---|---|
| No. | Description of Document | Claim of Privilege | Bates Stamp No. |
| 1 | Copies of Intra-Departmental Correspondence from Officer Levine, Officer Kuehl | Privilege claimed: Officer Ryan Levine's 14th Amendment right to privacy.<br><br>Without waiving this objection, State Defendants will produce these documents to Plaintiffs upon entry of a protective order. | DEFS PROD 9-15; 135-141 |

Mr. Levine further answers that to his knowledge, only he and Mr. Kuehl were witnesses to the incident referred to (other than Plaintiffs), and their statements were made in writing as documented in the above-referenced production.

**INTERROGATORY NO. 16:** State whether you sustained any injuries as a result of the incident described in the Complaint and state whether you observed of or are aware of any injuries sustained by any of the Plaintiffs as a result of that incident.

**ANSWER:**

With regard to the internal affairs file concerning the incident underlying this case (Case No. 13-181250), these files are protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, Mr. Levine objects to the production of Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 to the extent it is responsive to this Interrogatory.

Subject to and without waiving these objections and the general objections, Mr. Levine, pursuant to Federal Rule of Civil Procedure 1-033(d)(1), refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Document Description | Bates Stamp No. | Production |
|---|---|---|
| Department of Public Safety's Use of Force Form dated 8/6/2013 | DEFS PROD 16-18; 122-124 | 10/26/15 Defs Initial Disclosures |
| Photos | DEFS PROD 19-25 | 10/26/15 Defs Initial Disclosures |
| Statement of Probable Cause, New Mexico Supplemental Police Report | DEFS PROD 26-32 | 10/26/15 Defs Initial Disclosures |
| Copies of Police Report 2013-14195 | DEFS PROD 59-83; 142-165 | 10/26/15 Defs Initial Disclosures |

| | | | |
|---|---|---|---|
| colspan="4" | **Claim of Privilege Log for**<br>**Department of Public Safety Internal Affairs Investigation**<br>**of Complaint as to Case No. 13-181250** |
| No. | Description of Document | Claim of Privilege | Bates Stamp No. |
| 1 | Copies of Intra-Departmental Correspondence from Officer Levine | Privilege claimed: Officer Ryan Levine's 14th Amendment right to privacy.<br><br>Without waiving this objection, State Defendants will produce these documents to Plaintiffs upon entry of a protective order. | DEFS PROD 9-13; 135-139 |

Mr. Levine further answers that Plaintiffs are in the best position to articulate their injuries. He knows that Plaintiff Richard Martinez sought treatment the evening of the incident but does not know the specific extent or nature of his injuries or the injuries of other Plaintiffs, other than at the scene Ms. Marquez stated that her arm was broken.

Mr. Levine also answers that he had injuries consistent with the encounter with Mr. Martinez, including bruises and scrapes on his hands, arms, forearms, and elbows and a wound on the back of his head.

**INTERROGATORY NO. 17:** Identify every document you have prepared, reviewed, assisted in the preparation of, or were otherwise associated with in the course of your involvement with the incident described in the Complaint or any circumstances outlined in Interrogatory No. 15, *supra*.

**ANSWER:**

With regard to the internal affairs file concerning the incident underlying this case (Case No. 13-181250), these files are protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, Mr. Levine objects to the production of Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 to the extent it is responsive to this Interrogatory.

Mr. Levine further objects to this Interrogatory to the extent it is vague and confusing and unintelligible, in that it refers to Interrogatory 15 which asks for witnesses, and thus it is unanswerable as asked.

Subject to and without waiving these objections and the general objections, Mr. Levine, pursuant to Federal Rule of Civil Procedure 1-033(d)(1), refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Document Description | Bates Stamp No. | Production |
|---|---|---|
| Department of Public Safety's Use of Force Form dated 8/6/2013 | DEFS PROD 16-18; 122-124 | 10/26/15 Defs Initial Disclosures |
| Statement of Probable Cause, New Mexico Supplemental Police Report (where completed by Levine). | DEFS PROD 26-32 | 10/26/15 Defs Initial Disclosures |
| Copies of Police Report 2013-14195 (where completed by Levine). | DEFS PROD 59-83; 142-165 | 10/26/15 Defs Initial Disclosures |

| | Claim of Privilege Log for Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 | | |
|---|---|---|---|
| No. | Description of Document | Claim of Privilege | Bates Stamp No. |
| 1 | Copies of Intra-Departmental Correspondence from Officer Levine | Privilege claimed: Officer Ryan Levine's 14th Amendment right to privacy.<br><br>Without waiving this objection, State Defendants will produce these documents to Plaintiffs upon entry of a protective order. | DEFS PROD 9-13; 135-139 |

**INTERROGATORY NO. 18:** State the nature of each real estate and personal asset held by you and/or your immediate family members, the current location of each such asset, the current fair market value of each such asset, the name(s) and address(es) of any co-owners, and the length of time each such asset has been owned or possessed by you and/or your immediate family members. As to each such asset, state whether the asset is encumbered by any lien or encumbrance, and identify any deeds, certificates of title or other such documents evidencing an ownership of interest.

**ANSWER:**

Mr. Levine objects to this Interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, . . . [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1) (emphasis added).

Also, with regard to the information requested this information is protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, Mr. Levine objects to the production of the requested information.

Mr. Levine further objects to this Interrogatory as harassing, to the extent is seeks disclosure of his private financial affairs when any judgment in this case is subject to coverage by the State of New Mexico as noted in Defendants' Initial Disclosures served October 26, 2015.

**INTERROGATORY NO. 19:** Identify the serial numbers of all Taser devices that were issued to, or used by you, between August 6, 2009 and August 6, 2013.

**ANSWER:**

2010: X00-508306
2011: X00-508306
2013: X00-321743

**INTERROGATORY NO. 20:** State the number of Use of Force forms you have completed during your tenure as an employee of the New Mexico State Police Department and produce each and every one of these forms.

**ANSWER:**

Mr. Levine objects to this Interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, . . . [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1) (emphasis added). Specifically, in this regard, events after August 6, 2013 are not relevant to any aspect of this case.

Mr. Levine objects that the requested information is not relevant to the claims or defenses at issue in this matter. Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1299 (D.N.M. 2010 ("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training. The clearly established law requires the exclusion of any evidence regarding the violation of SOPs and training, because such evidence is irrelevant to Fourth–Amendment inquiry.").

Mr. Levine objects as the information sought is not relevant to the alleged excessive use of force at issue in the present case. See, e.g., Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1290-91 (D.N.M. 2010) ("The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor test required to introduce 404(b) evidence. See Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir.2005) (holding that plaintiff failed to satisfy the first factor—that evidence of prior use of force was introduced for a proper purpose); Tanberg v. Sholtis, 401 F.3d 1151, 1167–68 (10th Cir.2005) (holding that plaintiffs failed to satisfy the second factor—that evidence of past use of force was relevant). In Chavez v. City of Albuquerque, the Tenth Circuit examined the admissibility of prior decisions of defendant Andrew Lehocky, a K–9 officer, to use his police service dog in cases which were unrelated to the plaintiff's claim. See 402 F.3d at 1046. The Tenth Circuit affirmed the decision of the Honorable William P. Johnson, United States District Judge for the District of New Mexico, to exclude evidence of "other incidents in which arrestees claimed [the defendant] used excessive force in deploying [the police service dog] Bart." Id. at 1046. The plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well as modus operandi and contended that the district court should admit the prior incidents under rule 404(b). See 402 F.3d at 1046. Concluding that the evidence was not offered for a proper purpose, and in upholding the district court's decision to exclude these prior incidents, the Tenth Circuit stated and explained that:Although [the plaintiff] argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that [the K–9 officer's] use of [police service dog] constituted a "modus operandi," none of these alternative bases for introducing 404(b)-type evidence was implicated on the facts presented. There was no claim or

defense suggesting that [the K–9 officer] accidentally or mistakenly used the police dog. Indeed, it seems clear that he made a deliberate, conscious decision to do so. Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding the defendant's identity.Id. (citations omitted). The Tenth Circuit also noted that the district court's conclusion "that such evidence was not relevant under the objective reasonableness standard of Graham v. Connor[, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ] ... is consistent with the decisions of several *1291 other federal appellate courts which have considered similar requests." 402 F.3d at 1047 n. 4.").

Subject to and without waiving these objections and the general objections, Mr. Levine, answers that to his knowledge, the only use of force form he ever has completed during his tenure at NMSP is that made in connection with this incident.

**INTERROGATORY NO. 21:** Identify the VIN and squad car numbers of every government vehicle issued to, or used by you, between 2009 to the present identifying the year you were assigned to, and used, each vehicle.

**ANSWER:**

2010/2011 CVPI (Crown Vic) Plate 112 Vin: 2FABP7BV2AX136631
Unit 324 CVPI unknown VIN
2013 5071 CVPI 2FAHP71VX9X136934
2014-2015: Plate 716 Tahoe Police Pursuit Vehicle 1GNLC2E03BR334313
2015: Unit 6228 Black Dodge Charger PPV

**INTERROGATORY NO. 22:** Have you ever, at any time, served in the U.S. military? If so, specify which branch(es), your length of service, rank and military serial number, position(s), deployments, and the terms and conditions of your discharge, if any. Identify the areas you were deployed to between 2009 to the present and name each company, commander and unit you worked with.

**ANSWER:**

Mr. Levine objects to this Interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case, considering [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1) (emphasis added). Specifically, Mr. Levine's service to the United States by his military participation is not relevant to the claims or defenses at issue in this case.

With regard to officer personnel files, these files are protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, Mr. Levine objects to the production of his personnel file to the extent it is responsive to this Interrogatory.

Subject to and without waiving these objections and the general objections, Mr. Levine, pursuant to Federal Rule of Civil Procedure 1-033(d)(1), refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Claim of Privilege Log for Personnel Files of Officer Levine | | |
| --- | --- | --- |
| Description of Document | Claim of Privilege | Bates Stamp No. |
| Officer Nicholas Levine's Personnel File | Privilege claimed: Officer Levine's 14th Amendment right to privacy. Without waiving this objection, State Defendants will produce these | DEFS PROD 439-460 |

| | documents to Plaintiffs upon entry of a protective order. | |
|---|---|---|

Mr. Levine further answers:

      2006-2012, Vermont and New Mexico Army National Guard,
           2d Lieutenant, 1st Lieutenant, Captain, performing duties in these roles as infantry officer, platoon leader, and executive officer

      2012-present, United States Army Reserve,
           Captain, acting in this role as a civil affairs Team Chief

      DOD ID. 1285288173

      2012—Deployed to Sinai, Egypt with New Mexico Army National Guard as a 1st Lieutenant/Executive Officer. Captain Raymond Baca, Alpha Company 1-200 Infantry

      Reserves. Captain/Company Commander Casey Toyne; Major Leah Mock, Company Commander; Captain Quinn Henson. 440th Civil Affairs Battalion—Charlie Company.

**INTERROGATORY NO. 23:** Are you presently or have you ever been under the care of a mental health professional? If so, please state the reason you sought or were required to undergo a mental health assessment or treatment and provide a current copy of any psychiatric assessments and reports or an authorized, signed release to this office that identifies the names and addresses of your mental health providers.

**ANSWER:**

Mr. Levine objects to this Interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case, considering considering [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1) (emphasis added).

Mr. Levine objects because the evidence sought is not relevant to the issues in this case under the Fourth Amendment. See, e.g., Tanberg v. Sholtis, 401 F.3d 1151, 1168 (10th Cir. 2005) ("This standard is an objective one to which an officer's personal motivations in using a particular degree of force are irrelevant: "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id. at 397, 109 S.Ct. 1865. Under this objective standard, evidence tending to show Officer Sholtis's subjective state of mind is irrelevant to the jury's proper inquiry.").

Mr. Levine further objects to this Interrogatory to the extent it purports to require Mr. Levine to produce documents, which is not the function of an Interrogatory.

Further any information regarding Mr. Levine's history of psychological treatment, if any, is privileged. See Jaffee v. Redmond, 518 U.S. 1, 10-11, 116 S. Ct. 1923, 1928-29, 135 L. Ed. 2d 337 (1996) ("Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is "rooted in the imperative need for confidence and trust." Ibid. Treatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests. Effective psychotherapy, by contrast, depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.[9] As the Judicial Conference Advisory Committee observed in 1972 when it recommended that Congress recognize a psychotherapist privilege as part of the Proposed Federal Rules of Evidence, a psychiatrist's ability to help her patients" 'is completely dependent upon [the

patients'] willingness and ability to talk freely. This makes it difficult if not impossible for [a psychiatrist] to function without being able to assure ... patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to this general rule ..., there is wide agreement that confidentiality is a *sine qua non* for successful psychiatric treatment.' " Advisory Committee's *11 Notes to Proposed Rules, 56 F.R.D. 183, 242 (1972) (quoting Group for Advancement of Psychiatry, **1929 Report No. 45, Confidentiality and Privileged Communication in the Practice of Psychiatry 92 (June 1960)). By protecting confidential communications between a psychotherapist and her patient from involuntary disclosure, the proposed privilege thus serves important private interests.").

**INTERROGATORY NO. 24:** Please describe, in your best estimation, approximately how many calls for service you have been involved with involving any of the parties to this action prior to, and after this incident, specifying the nature of each and every call.

ANSWER:

To my knowledge, none before or after.

**INTERROGATORY NO. 25**: State the names of any and all organizations from 2009 to the present that you belong(ed) to, including fraternal organizations, online communities, social clubs, political groups, and religious groups.

**ANSWER:**

Association of the U.S. Army
National Tactical Officers Association
New Mexico State Police Association

Respectfully submitted,

**SAUCEDOCHAVEZ, P.C.**

By: /s/ Frank T. Apodaca
      Christopher T. Saucedo
      Frank T. Apodaca
Post Office Box 30046
Albuquerque, NM 87190
T: (505) 338-3945
Email: csaucedo@saucedochavez.com
Email: fapodaca@saucedochavez.com

*Attorneys for State Defendants*

# VERIFICATION

STATE OF _New mexico_ )
                     ) ss.
COUNTY OF _Bernalillo_ )

    I, **OFFICER NICHOLAS LEVINE**, being first duly sworn upon oath, deposes

and states that I have examined and read **DEFENDANT NICHOLAS LEVINE'S**

**ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES,** know the

contents thereof, and verify that the same are true of my own knowledge or to the best of

my own knowledge, except as to those matters herein stated upon information and belief,

and as to those matters I believe them to be true.


                                                                    NICHOLAS LEVINE


    Subscribed and sworn before me this _7th_ day of December, 2015, by

_Nicholas Levine_ .

OFFICIAL SEAL
MARINELL B. LOCSON
Notary Public
State of New Mexico
My commission expires: 11/5/17

                                          Notary Public