IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELOISA MARQUEZ, RICHARD MARTINEZ,
DESTINEY MARTINEZ and ANDRELLITA MARTINEZ

        Plaintiffs,                    Case No.:  1:15 CV 00787 KBM-LF

vs.

OFFICER NICHOLAS LEVINE, in his official capacity as
a commissioned law enforcement officer and individual capacity,
OFFICER RYAN KUEHL, in his official capacity as a
Commissioned law enforcement officer and individual capacity,
And the NEW MEXICO STATE POLICE DEPARTMENT,

        Defendants.


## DEFENDANT NEW MEXICO STATE  POLICE DEPARTMENT'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendant New Mexico State Police Department ("DPS") by and through its attorneys

SaucedoChavez, P.C. (Christopher T. Saucedo and Frank T. Apodaca), submits its Answers to

Plaintiffs' First Set of Interrogatories as follows:

1

DPS objects to each discovery request as follows:

1. DPS objects to each interrogatory to the extent it seeks information by the attorney-client privilege or the attorney work product doctrine. To the extent that a document that has been identified as responsive is being withheld on the basis of privilege, DPS will so state and will provide a privilege log identifying same in accordance with the requirements of Fed. R. Civ. Proc. 26(b)(5).

2. DPS objects to each interrogatory to the extent it seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." *Fed. R. Civ. Proc.* 26(b)(1) (emphasis added).

3. DPS objects to each interrogatory to the extent it is overly broad or unduly burdensome.

4. DPS objects to each interrogatory to the extent it is vague and ambiguous, and to the extent it does not describe the information sought with reasonable particularity.

5. DPS objects to each interrogatory to the extent it seeks information to which Plaintiff has equal or better access and which is in the control, custody, or possession of Plaintiff.

6. These objections shall apply to each and every interrogatory and shall be incorporated by reference as though fully set forth in each of the answers to interrogatories that follow below. A general objection may be specifically interposed for the purpose of clarity in answer to any particular interrogatory; however, the failure to specifically incorporate any general objection may not be construed as a waiver of the objection.

**INTERROGATORY NO. 4:** For each individual named in response to Interrogatory No. 1, provide that individual's account of the incident described in the Complaint.

**ANSWER:**

With regard to the internal affairs file concerning the incident underlying this case (Case No. 13-181250), these files are protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, DPS objects to the production of Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 to the extent it is responsive to this Interrogatory.

Subject to and without waiving this objection and the general objections, DPS, pursuant to Federal Rule of Civil Procedure 1-033(d)(1), refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Document Description | Bates Stamp No. | Production |
|---|---|---|
| Department of Public Safety's Use of Force Form dated 8/6/2013 | DEFS PROD 16-18; 122-124 | 10/26/15 Defs Initial Disclosures |
| Copies of Police Report 2013-14195. | DEFS PROD 59-83; 142-165 | 10/26/15 Defs Initial Disclosures |
| Statement of Probable Cause, New Mexico Supplemental Police Report | DEFS PROD 26-30 | 10/26/15 Defs Initial Disclosures |

| No. | Description of Document | Claim of Privilege | Bates Stamp No. |
|---|---|---|---|
| | **Claim of Privilege Log for** | | |
| | **Department of Public Safety Internal Affairs Investigation** | | |
| | **of Complaint as to Case No. 13-181250** | | |
| 1 | Copies of Intra-Departmental Correspondence from Officer Levine, Officer Kuehl | Privilege claimed: Officer Ryan Levine's 14th Amendment right to privacy.<br><br>Without waiving this objection, State Defendants will produce these documents to Plaintiffs upon entry of a protective order. | DEFS PROD 9-15; 135-141 |

**INTERROGATORY NO. 5:** For each individual named in response to Interrogatory No. 1, state that individual's detailed explanation of why he/she went to the area of the incident described in the Complaint at the time of the incident, and what, if any information he/she possessed or was told about to support the stop of, and use of force on, Plaintiffs. Each individual, in responding to this interrogatory, is directed to state whether this information derived from personal observation or from any other source, which source is to be explicitly identified.

**ANSWER:**

With regard to the internal affairs file concerning the incident underlying this case (Case No. 13-181250), these files are protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, DPS objects to the production of Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 to the extent it is responsive to this Interrogatory.

Subject to and without waiving this objection and the general objections, DPS, pursuant to Federal Rule of Civil Procedure 1-033(d)(1), refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Document Description | Bates Stamp No. | Production |
|---|---|---|
| Department of Public Safety's Use of Force Form dated 8/6/2013 | DEFS PROD 16-18; 122-124 | 10/26/15 Defs Initial Disclosures |
| Copies of Police Report 2013-14195. | DEFS PROD 59-83; 142-165 | 10/26/15 Defs Initial Disclosures |
| Statement of Probable Cause, New Mexico Supplemental Police Report | DEFS PROD 26-30 | 10/26/15 Defs Initial Disclosures |

| No. | Description of Document | Claim of Privilege | Bates Stamp No. |
|-----|------------------------|--------------------|-----------------|
| | **Claim of Privilege Log for**<br>**Department of Public Safety Internal Affairs Investigation**<br>**of Complaint as to Case No. 13-181250** | | |
| 1 | Copies of Intra-Departmental Correspondence from Officer Levine, Officer Kuehl | Privilege claimed: Officer Ryan Levine's 14th Amendment right to privacy.<br><br>Without waiving this objection, State Defendants will produce these documents to Plaintiffs upon entry of a protective order. | DEFS PROD 9-15; 135-141 |

**INTERROGATORY NO. 6:** For each individual named in response to Interrogatory No. 1, state whether that person was struck or injured in any way or the subject of any alleged resistance or assaultive behavior by Plaintiffs during the entire incident described in Plaintiffs' Complaint.

**ANSWER:**

With regard to the internal affairs file concerning the incident underlying this case (Case No. 13-181250), these files are protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, DPS objects to the production of Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 to the extent it is responsive to this Interrogatory.

Subject to and without waiving this objection and the general objections, DPS, pursuant to Federal Rule of Civil Procedure 1-033(d)(1), refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Document Description | Bates Stamp No. | Production |
|---|---|---|
| Department of Public Safety's Use of Force Form dated 8/6/2013 | DEFS PROD 16-18; 122-124 | 10/26/15 Defs Initial Disclosures |
| Copies of Police Report 2013-14195. | DEFS PROD 59-83; 142-165 | 10/26/15 Defs Initial Disclosures |
| Statement of Probable Cause, New Mexico Supplemental Police Report | DEFS PROD 26-30 | 10/26/15 Defs Initial Disclosures |

| | Claim of Privilege Log for<br>Department of Public Safety Internal Affairs Investigation<br>of Complaint as to Case No. 13-181250 | | |
|---|---|---|---|
| No. | Description of Document | Claim of Privilege | Bates Stamp No. |
| 1 | Copies of Intra-Departmental Correspondence from Officer Levine, Officer Kuehl | Privilege claimed: Officer Ryan Levine's 14th Amendment right to privacy.<br><br>Without waiving this objection, State Defendants will produce these documents to Plaintiffs upon entry of a protective order. | DEFS PROD 9-15; 135-141 |

**INTERROGATORY NO. 9:** Identify any and all documents that reference in any way contact by officers of the New Mexico State Police Department with Plaintiffs at the time of the incident described in the Plaintiffs' Complaint, including but not limited to any and all Incident Reports, Supplemental Reports, Computer Assisted Dispatch (CAD) sheets, radio tape transcripts, patrol logs, custody logs and use of force forms.

**ANSWER:**

With regard to the internal affairs file concerning the incident underlying this case (Case No. 13-181250), these files are protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, DPS objects to the production of Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 to the extent it is responsive to this Interrogatory.

As well, DPS objects to this interrogatory to the extent it purports to require identification of "any and all documents that reference "in any way" the subject matter requested. As such the interrogatory is overly broad on its face and therefore objectionable. Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc., 2007 WL 2192860, *4 (D. Kan. 2007).

Subject to and without waiving these objections and the general objections, DPS, pursuant to Federal Rule of Civil Procedure 1-033(d)(1), refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Document Description | Bates Stamp No. | Production |
|---|---|---|
| Department of Public Safety's Use of Force Form dated 8/6/2013 | DEFS PROD 16-18; 122-124 | 10/26/15 Defs Initial Disclosures |
| Photos | DEFS PROD 19-25 | 10/26/15 Defs Initial Disclosures |
| Statement of Probable Cause, New Mexico Supplemental Police Report | DEFS PROD 26-32 | 10/26/15 Defs Initial Disclosures |

| | | |
|---|---|---|
| Photos of Plaintiffs' injuries | DEFS PROD 33-58; 166-191 | 10/26/15 Defs Initial Disclosures |
| Copies of Police Report 2013-14195. | DEFS PROD 59-83; 142-165 | 10/26/15 Defs Initial Disclosures |
| Copy of the Incident Recall for Officer Levine for subject event on August 6, 2013. | DEFS PROD 84-93 | 10/26/15 Defs Initial Disclosures |
| Citizen Complaint/Compliment Form dated 8/7/2013 by Eloisa Marquez & Destiney Martinez | DEFS PROD 125-126; 129-131 | 10/26/15 Defs Initial Disclosures |
| Richard Martinez's Inmate File | DEFS PROD 192-218 | 10/26/15 Defs Initial Disclosures |
| Levine Video and Audio Recordings | DEFS PROD 658 | 11/13/15 Defs Initial Disclosures (1st Supplemental) |
| Kuehl Video and Audio Recordings | DEFS PROD 659 | 11/13/15 Defs Initial Disclosures (1st Supplemental) |

| Claim of Privilege Log for Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 | | | |
|---|---|---|---|
| No. | Description of Document | Claim of Privilege | Bates Stamp No. |
| 1 | Copies of Intra-Departmental Correspondence from Captain Jimenez, Lieutenant Maestas, Officer Levine, Officer Kuehl | Privilege claimed: Officer Ryan Levine's 14th Amendment right to privacy.<br><br>Without waiving this objection, State Defendants will produce these documents to Plaintiffs upon entry of a protective order. | DEFS PROD 6-15; 127-128; 132-141 |

**INTERROGATORY NO. 10:** Identify by name and badge number all officers of the New Mexico State Police Department assigned to work in the area of the incident described in Plaintiffs' Complaint at the time of the incident.

**ANSWER:**

Subject to and without waiving this objection and the general objections, DPS, pursuant to Federal Rule of Civil Procedure 1-033(d)(1), refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Document Description | Bates Stamp No. | Production |
|---|---|---|
| District 7 Officer Log | DEFS PROD. 731-732 | 12/14/15 Defs Initial Disclosures (5th Supplemental) |

**INTERROGATORY NO. 11:** State the number of unreasonable/excessive force and unlawful arrest complaints received, reviewed, and/or investigated by the New Mexico State Police Department in each of the past five (5) years. For each year, further identify the number of complaints that were determined to be sustained in whole or in part and state what disciplinary action if any was taken as to the charged officer(s).

**ANSWER:**

DPS objects to this Interrogatory as it is neither relevant to any party's claim or defense nor proportional to the needs of the case, considering (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the importance of the discovery in resolving the issues, and (4) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. Proc. 26(b)(1).

To establish municipal liability under § 1983, a plaintiff must first demonstrate, inter alia, that an officer committed an underlying constitutional violation. Saenz v. Lovington Mun. Sch. Dist., No. CIV 14-1005 JB/SMV, 2015 WL 2226021, at *19 (D.N.M. Apr. 30, 2015). Unless and until such a determination has been made, the burden of indulging onerous discovery that would seek, over such a lengthy period of time, every event of complaint for unlawful arrest/excessive force, for the entire state of New Mexico, is not justified.

Confronted with this threshold legal issue, that is yet to be determined in Plaintiffs' favor, and particularly under the new revisions to Rule 26, DPS respectfully submits that the Court, in the interest of proportionality, should stay discovery on Plaintiffs' municipal liability claim, until dispositive motions as to qualified immunity have been filed and adjudicated. This is in keeping with the nature of the doctrine of qualified immunity itself. Martin v. City of Albuquerque, No. CIV 14-1011 JB/GBW, 2015 WL 7803616, at *7 (D.N.M. Nov. 9, 2015) ("Once the qualified immunity defense has been raised, the Court must not let a plaintiff use discovery as a fishing expedition to flesh out the merits of his claim.").

Alternatively, DPS respectfully submits that the Court, in the interest of proportionality, should bifurcate Plaintiffs' municipal liability claim to structure discovery in a manner that appropriately phases the discovery burdens imposed upon public defendants, as here, until such time as an underlying constitutional violation has been determined. See, e.g., Ricciuti v. New York City Transit Authority, 796 F.Supp. 84, 85-86 (S.D.N.Y. 1992) ("While the plaintiffs suggest that their discovery requests will not be as expansive as defendants assert, defendants note that bifurcation may also prevent a prolonged examination of government policy and custom before trial. Judging by the pleadings, such an examination could be a time-consuming and elaborate affair: plaintiffs recite numerous incidents highlighting the improper training of officers, two of which occurred in 1975. If the Court orders bifurcation and the first trial disposes of the claims against the municipalities, **this exhaustive discovery would indeed be avoided.**")(emphasis added). Masi v. City of New York, 1999 WL 688453 at *1 (S.D.N.Y. 1999) ("The economies to be achieved by **limiting discovery** to the incident in question and its sequelae are apparent, and

have been set forth comprehensively by Judge Haight in Ricciuti, 796 F.Supp. at 86. I agree with him.") (emphasis added); Morales v. Irizarry, No. 95CIV.5068(AGS)(HBP), 1996 WL 609416, at *2 (S.D.N.Y. Oct. 22, 1996) ("Notwithstanding plaintiff's insistence to the contrary, the issue of municipal liability engages matters going well beyond whether plaintiff['s rights were violated by the individual defendants on the date alleged.] ("Moreover, it is possible that if the case is tried only on the issue of individual defendant liability, there may be no need to consider the issue of municipal liability regardless of the outcome of such a trial. If the verdict is in favor of the individual defendants, that ends the case; if the verdict is in favor of plaintiff, the City has a substantial incentive to settle the case. The case will be tried more quickly if **discovery** and trial are so limited.")(emphasis added).

DPS objects to this Interrogatory because Plaintiffs have not alleged a failure to discipline claim in their Complaint, so the portion of this Interrogatory addressing discipline is not relevant for that separate reason.

DPS objects to this Interrogatory to the extent it is overly broad and unduly burdensome on the basis of the factors articulated above.

DPS objects to this Interrogatory on the basis that Plaintiffs have offered no basis or justification for pursuing municipal liability claims in this case. Instead, the claim is included to create settlement leverage and to impose upon Defendants inordinate discovery burdens, with the off-chance that such discovery might actually produce evidence of the claim asserted. But "discovery, like all matters of procedure, has ultimate and necessary boundaries." Price v. Leflore County Detention Center Public Trust, 2014 WL 3672874 (E.D.Okla.), 1 (E.D.Okla.,2014) (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947).

A district court is:

"'not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim.' McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir.2002) (unpublished). "'Discovery ... is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" Rivera v. DJO, LLC, No. CIV 11–1119 JB/RHS, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting Tottenham v. Trans World Gaming Corp., No. CIV 00–7697 WK, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)(Knapp, J.)). See Hardrick v. Legal Servs. Corp., 96 F .R.D. 617, 618 (D.D.C.1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation marks omitted). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted). *23 Courts have recognized that, while it is true that relevancy in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Elecs. Corp. v. Exzec, Inc., No. CIV 93–5041 BMM, 1998 WL 9181, at *2 (N.D.Ill. Jan. 5, 1998). Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader

than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2 (internal quotation marks omitted)."

Simon v. Taylor, 2015 WL 2225653 (D.N.M.), *22-23 (D.N.M. Apr. 30, 2015).


**INTERROGATORY NO. 12:** Identify, for each of the past five years, the number of Tort Claim Act notices filed against the New Mexico State Police Department, and/or individual police officers, alleging violations of an individual's civil rights, the unreasonable/excessive use of force, and/or an unlawful arrest. Further identify the number of those actions which resulted in lawsuits (filed in state or federal court), judgments (before a court or by an arbitration panel) or settlements adverse to any of the defendants and state what disciplinary or other action(s) was/were taken against the individual named defendant(s).

**ANSWER:**

DPS objects to this Interrogatory as it is neither relevant to any party's claim or defense nor proportional to the needs of the case, considering (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the importance of the discovery in resolving the issues, and (4) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. Proc. 26(b)(1).

To establish municipal liability under § 1983, a plaintiff must first demonstrate, inter alia, that an officer committed an underlying constitutional violation. Saenz v. Lovington Mun. Sch. Dist., No. CIV 14-1005 JB/SMV, 2015 WL 2226021, at *19 (D.N.M. Apr. 30, 2015). Unless and until such a determination has been made, the burden of indulging onerous discovery that would seek, over such a lengthy period of time, every event of a Tort Claim Notice for unlawful arrest/excessive force, for the entire state of New Mexico, is not justified.

Confronted with this threshold legal issue, that is yet to be determined in Plaintiffs' favor, and particularly under the new revisions to Rule 26, DPS respectfully submits that the Court, in the interest of proportionality, should stay discovery on Plaintiffs' municipal liability claim, until dispositive motions as to qualified immunity have been filed and adjudicated. This is in keeping with the nature of the doctrine of qualified immunity itself. Martin v. City of Albuquerque, No. CIV 14-1011 JB/GBW, 2015 WL 7803616, at *7 (D.N.M. Nov. 9, 2015) ("Once the qualified immunity defense has been raised, the Court must not let a plaintiff use discovery as a fishing expedition to flesh out the merits of his claim.").

Alternatively, DPS respectfully submits that the Court, in the interest of proportionality, should bifurcate Plaintiffs' municipal liability claim to structure discovery in a manner that appropriately phases the discovery burdens imposed upon public defendants, as here, until such time as an underlying constitutional violation has been determined. See, e.g., Ricciuti v. New York City Transit Authority, 796 F.Supp. 84, 85-86 (S.D.N.Y. 1992) ("While the plaintiffs suggest that their discovery requests will not be as expansive as defendants assert, defendants note that bifurcation may also prevent a prolonged examination of government policy and custom before trial. Judging by the pleadings, such an examination could be a time-consuming and elaborate affair: plaintiffs recite numerous incidents highlighting the improper training of officers, two of which occurred in 1975. If the Court orders bifurcation and the first trial disposes of the claims against the municipalities, **this exhaustive discovery would indeed be avoided.**")(emphasis added). Masi v. City of New York, 1999 WL 688453 at *1 (S.D.N.Y. 1999) ("The economies to be achieved by **limiting discovery** to the incident in question and its sequelae are apparent, and have been set forth comprehensively by Judge Haight in Ricciuti, 796 F.Supp. at 86. I agree with him.") (emphasis added); Morales v. Irizarry, No. 95CIV.5068(AGS)(HBP), 1996 WL 609416, at *2 (S.D.N.Y. Oct. 22, 1996) ("Notwithstanding plaintiff's insistence to the contrary, the issue of municipal liability engages matters going well beyond whether plaintiff['s rights were violated by the individual defendants on the date alleged.] ("Moreover, it is possible that if the case is tried only on the issue of individual defendant liability, there may be no need to consider the issue of municipal liability regardless of the outcome of such a trial. If the verdict is in favor of the individual defendants, that ends the case; if the verdict is in favor of plaintiff, the City has a substantial incentive to settle the case. The case will be tried more quickly if **discovery** and trial are so limited.")(emphasis added).

DPS objects to this Interrogatory because Plaintiffs have not alleged a failure to discipline claim in their Complaint, so the portion of this Interrogatory addressing discipline is not relevant for that separate reason.

DPS objects to this Interrogatory to the extent it is overly broad and unduly burdensome on the basis of the factors articulated above.

DPS objects to this Interrogatory on the basis that Plaintiffs have offered no basis or justification for pursuing municipal liability claims in this case. Instead, the claim is included to create settlement leverage and to impose upon Defendants inordinate discovery burdens, with the off-chance that such discovery might actually produce evidence of the claim asserted. But "discovery, like all matters of procedure, has ultimate and necessary boundaries." Price v. Leflore County Detention Center Public Trust, 2014 WL 3672874 (E.D.Okla.), 1 (E.D.Okla.,2014) (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947).

A district court is:

"'not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim.' McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir.2002) (unpublished). "'Discovery ... is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" Rivera v. DJO, LLC, No. CIV 11–1119 JB/RHS, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting Tottenham v. Trans World Gaming Corp., No. CIV 00–7697 WK, 2002 WL

1967023, at \*2 (S.D.N.Y. June 21, 2002)(Knapp, J.)). See Hardrick v. Legal Servs. Corp., 96 F .R.D. 617, 618 (D.D.C.1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation marks omitted). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted). \*23 Courts have recognized that, while it is true that relevancy in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Elecs. Corp. v. Exzec, Inc., No. CIV 93–5041 BMM, 1998 WL 9181, at \*2 (N.D.Ill. Jan. 5, 1998). Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at \*2 (internal quotation marks omitted)."

Simon v. Taylor, 2015 WL 2225653 (D.N.M.), \*22-23 (D.N.M. Apr. 30, 2015).

27

**INTERROGATORY NO. 13:** Identify for all individuals named in response to Interrogatory No. 1 any and all incidents for which he/she has been the subject of a police department investigation for misconduct for the entire period of his/her employment with the New Mexico State Police Department. For each incident, further identify the outcome of that investigation, including both the decision rendered and any disciplinary action or other consequence that followed as a result therefrom.

**ANSWER:**

DPS objects that the requested information is not relevant to the claims or defenses at issue in this matter. Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1299 (D.N.M. 2010 ("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training. The clearly established law requires the exclusion of any evidence regarding the violation of SOPs and training, because such evidence is irrelevant to Fourth–Amendment inquiry.").

DPS objects as the information sought is not relevant to the alleged excessive use of force at issue in the present case. See, e.g., Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1290-91 (D.N.M. 2010) ("The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor test required to introduce 404(b) evidence. See Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir.2005) (holding that plaintiff failed to satisfy the first factor—that evidence of prior use of force was introduced for a proper purpose); Tanberg v. Sholtis, 401 F.3d 1151, 1167–68 (10th Cir.2005) (holding that plaintiffs failed to satisfy the second factor—that evidence of past use of force was relevant). In Chavez v. City of Albuquerque, the Tenth Circuit examined the admissibility of prior decisions of defendant Andrew Lehocky, a K–9 officer, to use his police service dog in cases which were unrelated to the plaintiff's claim. See 402 F.3d at 1046. The Tenth Circuit affirmed the decision of the Honorable William P. Johnson, United States District Judge for the District of New Mexico, to exclude evidence of "other incidents in which arrestees claimed [the defendant] used excessive force in deploying [the police service dog] Bart." Id. at 1046. The plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well as modus operandi and contended that the district court should admit the prior incidents under rule 404(b). See 402 F.3d at 1046. Concluding that the evidence was not offered for a proper purpose, and in upholding the district court's decision to exclude these prior incidents, the Tenth Circuit stated and explained that:Although [the plaintiff] argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that [the K–9 officer's] use of [police service dog] constituted a "modus operandi," none of these alternative bases for introducing 404(b)-type evidence was implicated on the facts presented. There was no claim or defense suggesting that [the K–9 officer] accidentally or mistakenly used the police dog. Indeed, it seems clear that he made a deliberate, conscious decision to do so. Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding

the defendant's identity.Id. (citations omitted). The Tenth Circuit also noted that the district court's conclusion "that such evidence was not relevant under the objective reasonableness standard of Graham v. Connor[, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ] ... is consistent with the decisions of several *1291 other federal appellate courts which have considered similar requests." 402 F.3d at 1047 n. 4.").

With regard to the internal affairs file concerning the incident underlying this case (Case No. 13-181250), and officer personnel files, these files are protected by the federal constitutional right to privacy. Avoiding the disclosure of personal matters is a privacy interest which the United States Supreme Court recognizes. Whalen v. Roe, 429 U.S. 589, 598 (1977). Although it is unspecified in the federal constitution, the right to privacy is "within the penumbra of specific guarantees of the Bill of Rights," including the Tenth Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479 (1965). More specifically, police officers have a recognized expectation of privacy as to personal matters. Denver Policemen's Protection Association v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). Accordingly, DPS objects to the production of Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 or officer personnel files to the extent they are responsive to this Interrogatory.

Subject to and without waiving this objection and the general objections, DPS, pursuant to Federal Rule of Civil Procedure 1-033(d)(1), states as to Kuehl, none, and as to Levine refers the requesting party to the following business records, from which an answer to this Interrogatory may be ascertained:

| Claim of Privilege Log for Department of Public Safety Internal Affairs Investigation of Complaint as to Case No. 13-181250 | | | |
|---|---|---|---|
| No. | Description of Document | Claim of Privilege | Bates Stamp No. |
| 1 | Copies of Intra-Departmental Correspondence from Captain Jimenez, Lieutenant Maestas, Officer Levine, Officer Kuehl | Privilege claimed: Officer Ryan Levine's 14th Amendment right to privacy. Without waiving this objection, State Defendants will produce these documents to Plaintiffs upon entry of a protective order. | DEFS PROD 6-15; 127-128; 132-141 |

| Claim of Privilege Log for Personnel Files of Officer Levine | | |
|---|---|---|
| Description of Document | Claim of Privilege | Bates Stamp No. |

| | | |
|---|---|---|
| Officer Nicholas Levine's Personnel File | Privilege claimed: Officer Levine's 14th Amendment right to privacy. Without waiving this objection, State Defendants will produce these documents to Plaintiffs upon entry of a protective order. | DEFS PROD 393-394. |

**INTERROGATORY NO. 15:** State whether the New Mexico State Police Department and/or the State of New Mexico has a procedure or system in place to identify police officers who have been the subject of previous citizens' complaints or internal departmental complaints of misconduct. If so, provide a detailed description of the nature of such a procedure or system, including the date on which the procedure or system is initiated, a description of any documents and forms and directives and memoranda which relate to or are employed in connection with such a procedure or system, and a detailed description of the manner in which the procedure or system functions.

**ANSWER:**

DPS objects to this Interrogatory as it is neither relevant to any party's claim or defense nor proportional to the needs of the case, considering (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the importance of the discovery in resolving the issues, and (4) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. Proc. 26(b)(1).

To establish municipal liability under § 1983, a plaintiff must first demonstrate, inter alia, that an officer committed an underlying constitutional violation. Saenz v. Lovington Mun. Sch. Dist., No. CIV 14-1005 JB/SMV, 2015 WL 2226021, at *19 (D.N.M. Apr. 30, 2015). Unless and until such a determination has been made, the burden of indulging onerous discovery purporting to investigate procedures not at issue with respect to the underlying arrest is not justified.

Confronted with this threshold legal issue, that is yet to be determined in Plaintiffs' favor, and particularly under the new revisions to Rule 26, DPS respectfully submits that the Court, in the interest of proportionality, should stay discovery on Plaintiffs' municipal liability claim, until dispositive motions as to qualified immunity have been filed and adjudicated. This is in keeping with the nature of the doctrine of qualified immunity itself. Martin v. City of Albuquerque, No. CIV 14-1011 JB/GBW, 2015 WL 7803616, at *7 (D.N.M. Nov. 9, 2015) ("Once the qualified immunity defense has been raised, the Court must not let a plaintiff use discovery as a fishing expedition to flesh out the merits of his claim.").

Alternatively, DPS respectfully submits that the Court, in the interest of proportionality, should bifurcate Plaintiffs' municipal liability claim to structure discovery in a manner that appropriately phases the discovery burdens imposed upon public defendants, as here, until such time as an underlying constitutional violation has been determined. See, e.g., Ricciuti v. New York City Transit Authority, 796 F.Supp. 84, 85-86 (S.D.N.Y. 1992) ("While the plaintiffs suggest that their discovery requests will not be as expansive as defendants assert, defendants note that bifurcation may also prevent a prolonged examination of government policy and custom before trial. Judging by the pleadings, such an examination could be a time-consuming and elaborate

affair: plaintiffs recite numerous incidents highlighting the improper training of officers, two of which occurred in 1975. If the Court orders bifurcation and the first trial disposes of the claims against the municipalities, **this exhaustive discovery would indeed be avoided.**")(emphasis added). Masi v. City of New York, 1999 WL 688453 at *1 (S.D.N.Y. 1999) ("The economies to be achieved by **limiting discovery** to the incident in question and its sequelae are apparent, and have been set forth comprehensively by Judge Haight in Ricciuti, 796 F.Supp. at 86. I agree with him.") (emphasis added); Morales v. Irizarry, No. 95CIV.5068(AGS)(HBP), 1996 WL 609416, at *2 (S.D.N.Y. Oct. 22, 1996) ("Notwithstanding plaintiff's insistence to the contrary, the issue of municipal liability engages matters going well beyond whether plaintiff['s rights were violated by the individual defendants on the date alleged.] ("Moreover, it is possible that if the case is tried only on the issue of individual defendant liability, there may be no need to consider the issue of municipal liability regardless of the outcome of such a trial. If the verdict is in favor of the individual defendants, that ends the case; if the verdict is in favor of plaintiff, the City has a substantial incentive to settle the case. The case will be tried more quickly if **discovery** and trial are so limited.")(emphasis added).

DPS objects to this Interrogatory to the extent it is overly broad and unduly burdensome on the basis of the factors articulated above.

DPS objects to this Interrogatory on the basis that Plaintiffs have offered no basis or justification for pursuing municipal liability claims in this case. Instead, the claim is included to create settlement leverage and to impose upon Defendants inordinate discovery burdens, with the off-chance that such discovery might actually produce evidence of the claim asserted. But "discovery, like all matters of procedure, has ultimate and necessary boundaries." Price v. Leflore County Detention Center Public Trust, 2014 WL 3672874 (E.D.Okla.), 1 (E.D.Okla.,2014) (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947).

A district court is:

"'not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim.' McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir.2002) (unpublished). "'Discovery ... is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" Rivera v. DJO, LLC, No. CIV 11–1119 JB/RHS, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting Tottenham v. Trans World Gaming Corp., No. CIV 00–7697 WK, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)(Knapp, J.)). See Hardrick v. Legal Servs. Corp., 96 F .R.D. 617, 618 (D.D.C.1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation marks omitted). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted). *23 Courts have recognized that, while it is true that relevancy in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Elecs. Corp. v. Exzec, Inc., No.

CIV 93–5041 BMM, 1998 WL 9181, at *2 (N.D.Ill. Jan. 5, 1998). Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2 (internal quotation marks omitted)."

Simon v. Taylor, 2015 WL 2225653 (D.N.M.), *22-23 (D.N.M. Apr. 30, 2015).

**INTERROGATORY NO. 16:** State whether the New Mexico State Police Department and/or the State of New Mexico has a procedure or system in place to train police officers to recognize, inquire and/or properly address citizens known to exhibit or actively exhibiting signs of physical or cognitive disability. If so, provide a detailed description of the nature of such procedure or system, including the date on which the procedure or system was initiated, the person who initiated the procedure, a description of any documents and forms and directives and memoranda which relate to or are employed in connection with such a procedure or system, and a detailed description of the manner in which the procedure or system functions.

**ANSWER:**

DPS objects to this Interrogatory as it is neither relevant to any party's claim or defense nor proportional to the needs of the case, considering (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the importance of the discovery in resolving the issues, and (4) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. Proc. 26(b)(1).

DPS objects that the requested information is not relevant to the claims or defenses at issue in this matter. Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1299 (D.N.M. 2010 ("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training. The clearly established law requires the exclusion of any evidence regarding the violation of SOPs and training, because such evidence is irrelevant to Fourth–Amendment inquiry.").

DPS objects as the information sought is not relevant to the alleged excessive use of force at issue in the present case. See, e.g., Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1290-91 (D.N.M. 2010) ("The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor test required to introduce 404(b) evidence. See Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir.2005) (holding that plaintiff failed to satisfy the first factor—that evidence of prior use of force was introduced for a proper purpose); Tanberg v. Sholtis, 401 F.3d 1151, 1167–68 (10th Cir.2005) (holding that plaintiffs failed to satisfy the second factor—that evidence of past use of force was relevant). In Chavez v. City of Albuquerque, the Tenth Circuit examined the admissibility of prior decisions of defendant Andrew Lehocky, a K–9 officer, to use his police service dog in cases which were unrelated to the plaintiff's claim. See 402 F.3d at 1046. The Tenth Circuit affirmed the decision of the Honorable William P. Johnson, United States District Judge for the District of New Mexico, to exclude evidence of "other incidents in which arrestees claimed [the defendant] used excessive force in deploying [the police service dog] Bart." Id. at 1046. The plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well as modus operandi and contended that the district court should admit the prior incidents under rule 404(b). See 402 F.3d at 1046. Concluding that the evidence was not

offered for a proper purpose, and in upholding the district court's decision to exclude these prior incidents, the Tenth Circuit stated and explained that:Although [the plaintiff] argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that [the K–9 officer's] use of [police service dog] constituted a "modus operandi," none of these alternative bases for introducing 404(b)-type evidence was implicated on the facts presented. There was no claim or defense suggesting that [the K–9 officer] accidentally or mistakenly used the police dog. Indeed, it seems clear that he made a deliberate, conscious decision to do so. Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding the defendant's identity.Id. (citations omitted). The Tenth Circuit also noted that the district court's conclusion "that such evidence was not relevant under the objective reasonableness standard of Graham v. Connor[, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ] ... is consistent with the decisions of several *1291 other federal appellate courts which have considered similar requests." 402 F.3d at 1047 n. 4.").

To establish municipal liability under § 1983, a plaintiff must first demonstrate, inter alia, that an officer committed an underlying constitutional violation. Saenz v. Lovington Mun. Sch. Dist., No. CIV 14-1005 JB/SMV, 2015 WL 2226021, at *19 (D.N.M. Apr. 30, 2015). Unless and until such a determination has been made, the burden of indulging onerous discovery that would seek discovery as to a vaguely described process inquired of here, and not relevant to the underlying alleged constitutional violations is not justified.

Confronted with this threshold legal issue, that is yet to be determined in Plaintiffs' favor, and particularly under the new revisions to Rule 26, DPS respectfully submits that the Court, in the interest of proportionality, should stay discovery on Plaintiffs' municipal liability claim, until dispositive motions as to qualified immunity have been filed and adjudicated. This is in keeping with the nature of the doctrine of qualified immunity itself. Martin v. City of Albuquerque, No. CIV 14-1011 JB/GBW, 2015 WL 7803616, at *7 (D.N.M. Nov. 9, 2015) ("Once the qualified immunity defense has been raised, the Court must not let a plaintiff use discovery as a fishing expedition to flesh out the merits of his claim.").

Alternatively, DPS respectfully submits that the Court, in the interest of proportionality, should bifurcate Plaintiffs' municipal liability claim to structure discovery in a manner that appropriately phases the discovery burdens imposed upon public defendants, as here, until such time as an underlying constitutional violation has been determined. See, e.g., Ricciuti v. New York City Transit Authority, 796 F.Supp. 84, 85-86 (S.D.N.Y. 1992) ("While the plaintiffs suggest that their discovery requests will not be as expansive as defendants assert, defendants note that bifurcation may also prevent a prolonged examination of government policy and custom before trial. Judging by the pleadings, such an examination could be a time-consuming and elaborate affair: plaintiffs recite numerous incidents highlighting the improper training of officers, two of which occurred in 1975. If the Court orders bifurcation and the first trial disposes of the claims against the municipalities, **this exhaustive discovery would indeed be avoided.**")(emphasis added). Masi v. City of New York, 1999 WL 688453 at *1 (S.D.N.Y. 1999) ("The economies to be achieved by **limiting discovery** to the incident in question and its sequelae are apparent, and have been set forth comprehensively by Judge Haight in Ricciuti, 796 F.Supp. at 86. I agree with him.") (emphasis added); Morales v. Irizarry, No. 95CIV.5068(AGS)(HBP), 1996 WL 609416, at *2 (S.D.N.Y. Oct. 22, 1996) ("Notwithstanding plaintiff's insistence to the contrary, the issue of

municipal liability engages matters going well beyond whether plaintiff['s rights were violated by the individual defendants on the date alleged.] ("Moreover, it is possible that if the case is tried only on the issue of individual defendant liability, there may be no need to consider the issue of municipal liability regardless of the outcome of such a trial. If the verdict is in favor of the individual defendants, that ends the case; if the verdict is in favor of plaintiff, the City has a substantial incentive to settle the case. The case will be tried more quickly if **discovery** and trial are so limited.")(emphasis added).

DPS objects to this Interrogatory to the extent it is overly broad and unduly burdensome on the basis of the factors articulated above.

DPS objects to this Interrogatory on the basis that Plaintiffs have offered no basis or justification for pursuing municipal liability claims in this case. Instead, the claim is included to create settlement leverage and to impose upon Defendants inordinate discovery burdens, with the off-chance that such discovery might actually produce evidence of the claim asserted. But "discovery, like all matters of procedure, has ultimate and necessary boundaries." Price v. Leflore County Detention Center Public Trust, 2014 WL 3672874 (E.D.Okla.), 1 (E.D.Okla.,2014) (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947).

A district court is:

"'not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim.' McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir.2002) (unpublished). "'Discovery ... is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" Rivera v. DJO, LLC, No. CIV 11–1119 JB/RHS, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting Tottenham v. Trans World Gaming Corp., No. CIV 00–7697 WK, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)(Knapp, J.)). See Hardrick v. Legal Servs. Corp., 96 F .R.D. 617, 618 (D.D.C.1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation marks omitted). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted). *23 Courts have recognized that, while it is true that relevancy in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Elecs. Corp. v. Exzec, Inc., No. CIV 93–5041 BMM, 1998 WL 9181, at *2 (N.D.Ill. Jan. 5, 1998). Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2 (internal quotation marks omitted)."

Simon v. Taylor, 2015 WL 2225653 (D.N.M.), *22-23 (D.N.M. Apr. 30, 2015).

**INTERROGATORY NO. 17:** State whether the New Mexico State Police Department and/or the State of New Mexico has a procedure or system in place to train police officers to engage citizens in consensual encounters through the use of friendly (non-combative) dialogue. If so, provide a detailed description of the nature of such procedure or system, including the date on which the procedure or system was initiated, a description of any documents and forms and directives and memoranda which relate to or are employed in connection with such a procedure or system, and a detailed description of the manner in which the procedure or system functions.

**ANSWER:**

DPS objects to this Interrogatory as it is neither relevant to any party's claim or defense nor proportional to the needs of the case, considering (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the importance of the discovery in resolving the issues, and (4) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. Proc. 26(b)(1).

DPS objects that the requested information is not relevant to the claims or defenses at issue in this matter. Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1299 (D.N.M. 2010) ("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training. The clearly established law requires the exclusion of any evidence regarding the violation of SOPs and training, because such evidence is irrelevant to Fourth–Amendment inquiry.").

DPS objects as the information sought is not relevant to the alleged excessive use of force at issue in the present case. See, e.g., Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1290-91 (D.N.M. 2010) ("The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor test required to introduce 404(b) evidence. See Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir.2005) (holding that plaintiff failed to satisfy the first factor—that evidence of prior use of force was introduced for a proper purpose); Tanberg v. Sholtis, 401 F.3d 1151, 1167–68 (10th Cir.2005) (holding that plaintiffs failed to satisfy the second factor—that evidence of past use of force was relevant). In Chavez v. City of Albuquerque, the Tenth Circuit examined the admissibility of prior decisions of defendant Andrew Lehocky, a K–9 officer, to use his police service dog in cases which were unrelated to the plaintiff's claim. See 402 F.3d at 1046. The Tenth Circuit affirmed the decision of the Honorable William P. Johnson, United States District Judge for the District of New Mexico, to exclude evidence of "other incidents in which arrestees claimed [the defendant] used excessive force in deploying [the police service dog] Bart." Id. at 1046. The plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well as modus operandi and contended that the district court should admit the prior incidents under rule 404(b). See 402 F.3d at 1046. Concluding that the evidence was not offered for a proper purpose, and in upholding the district court's decision to exclude these prior

incidents, the Tenth Circuit stated and explained that:Although [the plaintiff] argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that [the K–9 officer's] use of [police service dog] constituted a "modus operandi," none of these alternative bases for introducing 404(b)-type evidence was implicated on the facts presented. There was no claim or defense suggesting that [the K–9 officer] accidentally or mistakenly used the police dog. Indeed, it seems clear that he made a deliberate, conscious decision to do so. Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding the defendant's identity.Id. (citations omitted). The Tenth Circuit also noted that the district court's conclusion "that such evidence was not relevant under the objective reasonableness standard of Graham v. Connor[, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ] ... is consistent with the decisions of several *1291 other federal appellate courts which have considered similar requests." 402 F.3d at 1047 n. 4.").

To establish municipal liability under § 1983, a plaintiff must first demonstrate, inter alia, that an officer committed an underlying constitutional violation. Saenz v. Lovington Mun. Sch. Dist., No. CIV 14-1005 JB/SMV, 2015 WL 2226021, at *19 (D.N.M. Apr. 30, 2015). Unless and until such a determination has been made, the burden of indulging onerous discovery that would seek discovery as to a vaguely described process inquired of here, and not relevant to the underlying alleged constitutional violations is notjustified.

Confronted with this threshold legal issue, that is yet to be determined in Plaintiffs' favor, and particularly under the new revisions to Rule 26, DPS respectfully submits that the Court, in the interest of proportionality, should stay discovery on Plaintiffs' municipal liability claim, until dispositive motions as to qualified immunity have been filed and adjudicated. This is in keeping with the nature of the doctrine of qualified immunity itself. Martin v. City of Albuquerque, No. CIV 14-1011 JB/GBW, 2015 WL 7803616, at *7 (D.N.M. Nov. 9, 2015) ("Once the qualified immunity defense has been raised, the Court must not let a plaintiff use discovery as a fishing expedition to flesh out the merits of his claim.").

Alternatively, DPS respectfully submits that the Court, in the interest of proportionality, should bifurcate Plaintiffs' municipal liability claim to structure discovery in a manner that appropriately phases the discovery burdens imposed upon public defendants, as here, until such time as an underlying constitutional violation has been determined. See, e.g., Ricciuti v. New York City Transit Authority, 796 F.Supp. 84, 85-86 (S.D.N.Y. 1992) ("While the plaintiffs suggest that their discovery requests will not be as expansive as defendants assert, defendants note that bifurcation may also prevent a prolonged examination of government policy and custom before trial. Judging by the pleadings, such an examination could be a time-consuming and elaborate affair: plaintiffs recite numerous incidents highlighting the improper training of officers, two of which occurred in 1975. If the Court orders bifurcation and the first trial disposes of the claims against the municipalities, this exhaustive discovery would indeed be avoided.")(emphasis added). Masi v. City of New York, 1999 WL 688453 at *1 (S.D.N.Y. 1999) ("The economies to be achieved by limiting discovery to the incident in question and its sequelae are apparent, and have been set forth comprehensively by Judge Haight in Ricciuti, 796 F.Supp. at 86. I agree with him.") (emphasis added); Morales v. Irizarry, No. 95CIV.5068(AGS)(HBP), 1996 WL 609416, at *2 (S.D.N.Y. Oct. 22, 1996) ("Notwithstanding plaintiff's insistence to the contrary, the issue of municipal liability engages matters going well beyond whether plaintiff['s rights were violated by

the individual defendants on the date alleged.] ("Moreover, it is possible that if the case is tried only on the issue of individual defendant liability, there may be no need to consider the issue of municipal liability regardless of the outcome of such a trial. If the verdict is in favor of the individual defendants, that ends the case; if the verdict is in favor of plaintiff, the City has a substantial incentive to settle the case. The case will be tried more quickly if **discovery** and trial are so limited.")(emphasis added).

DPS objects to this Interrogatory to the extent it is overly broad and unduly burdensome on the basis of the factors articulated above.

DPS objects to this Interrogatory on the basis that Plaintiffs have offered no basis or justification for pursuing municipal liability claims in this case. Instead, the claim is included to create settlement leverage and to impose upon Defendants inordinate discovery burdens, with the off-chance that such discovery might actually produce evidence of the claim asserted. But "discovery, like all matters of procedure, has ultimate and necessary boundaries." Price v. Leflore County Detention Center Public Trust, 2014 WL 3672874 (E.D.Okla.), 1 (E.D.Okla.,2014) (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947).

A district court is:

"'not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim.' McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir.2002) (unpublished). "'Discovery ... is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" Rivera v. DJO, LLC, No. CIV 11–1119 JB/RHS, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting Tottenham v. Trans World Gaming Corp., No. CIV 00–7697 WK, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)(Knapp, J.)). See Hardrick v. Legal Servs. Corp., 96 F .R.D. 617, 618 (D.D.C.1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation marks omitted). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted). *23 Courts have recognized that, while it is true that relevancy in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Elecs. Corp. v. Exzec, Inc., No. CIV 93–5041 BMM, 1998 WL 9181, at *2 (N.D.Ill. Jan. 5, 1998). Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2 (internal quotation marks omitted)."

Simon v. Taylor, 2015 WL 2225653 (D.N.M.), *22-23 (D.N.M. Apr. 30, 2015).

**INTERROGATORY NO. 18:** State whether the New Mexico State Police Department and/or the State of New Mexico has a procedure or system in place to train police officers in understanding and implementing established legal standards under the U.S. and New Mexico State Constitutions. If so, provide a detailed description of the nature of such procedure or system, including the date on which the procedure or system was initiated, a description of any documents and forms and directives and memoranda which relate to or are employed in connection with such a procedure or system, and a detailed description of the manner in which the procedure or system functions.

**ANSWER:**

DPS objects to this Interrogatory as it is neither relevant to any party's claim or defense nor proportional to the needs of the case, considering (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the importance of the discovery in resolving the issues, and (4) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. Proc. 26(b)(1).

DPS objects that the requested information is not relevant to the claims or defenses at issue in this matter. Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1299 (D.N.M. 2010 ("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training. The clearly established law requires the exclusion of any evidence regarding the violation of SOPs and training, because such evidence is irrelevant to Fourth–Amendment inquiry.").

DPS objects as the information sought is not relevant to the alleged excessive use of force at issue in the present case. See, e.g., Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1290-91 (D.N.M. 2010) ("The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor test required to introduce 404(b) evidence. See Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir.2005) (holding that plaintiff failed to satisfy the first factor—that evidence of prior use of force was introduced for a proper purpose); Tanberg v. Sholtis, 401 F.3d 1151, 1167–68 (10th Cir.2005) (holding that plaintiffs failed to satisfy the second factor—that evidence of past use of force was relevant). In Chavez v. City of Albuquerque, the Tenth Circuit examined the admissibility of prior decisions of defendant Andrew Lehocky, a K–9 officer, to use his police service dog in cases which were unrelated to the plaintiff's claim. See 402 F.3d at 1046. The Tenth Circuit affirmed the decision of the Honorable William P. Johnson, United States District Judge for the District of New Mexico, to exclude evidence of "other incidents in which arrestees claimed [the defendant] used excessive force in deploying [the police service dog] Bart." Id. at 1046. The plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well as modus operandi and contended that the district court should admit the prior incidents under rule 404(b). See 402 F.3d at 1046. Concluding that the evidence was not

offered for a proper purpose, and in upholding the district court's decision to exclude these prior incidents, the Tenth Circuit stated and explained that:Although [the plaintiff] argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that [the K–9 officer's] use of [police service dog] constituted a "modus operandi," none of these alternative bases for introducing 404(b)-type evidence was implicated on the facts presented. There was no claim or defense suggesting that [the K–9 officer] accidentally or mistakenly used the police dog. Indeed, it seems clear that he made a deliberate, conscious decision to do so. Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding the defendant's identity.Id. (citations omitted). The Tenth Circuit also noted that the district court's conclusion "that such evidence was not relevant under the objective reasonableness standard of Graham v. Connor[, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ] ... is consistent with the decisions of several *1291 other federal appellate courts which have considered similar requests." 402 F.3d at 1047 n. 4.").

To establish municipal liability under § 1983, a plaintiff must first demonstrate, inter alia, that an officer committed an underlying constitutional violation. Saenz v. Lovington Mun. Sch. Dist., No. CIV 14-1005 JB/SMV, 2015 WL 2226021, at *19 (D.N.M. Apr. 30, 2015). Unless and until such a determination has been made, the burden of indulging onerous discovery that would seek, over such a lengthy period of time, every event of complaint for unlawful arrest/excessive force, for the entire state of New Mexico, is not justified.

Confronted with this threshold legal issue, that is yet to be determined in Plaintiffs' favor, and particularly under the new revisions to Rule 26, DPS respectfully submits that the Court, in the interest of proportionality, should stay discovery on Plaintiffs' municipal liability claim, until dispositive motions as to qualified immunity have been filed and adjudicated. This is in keeping with the nature of the doctrine of qualified immunity itself. Martin v. City of Albuquerque, No. CIV 14-1011 JB/GBW, 2015 WL 7803616, at *7 (D.N.M. Nov. 9, 2015) ("Once the qualified immunity defense has been raised, the Court must not let a plaintiff use discovery as a fishing expedition to flesh out the merits of his claim.").

Alternatively, DPS respectfully submits that the Court, in the interest of proportionality, should bifurcate Plaintiffs' municipal liability claim to structure discovery in a manner that appropriately phases the discovery burdens imposed upon public defendants, as here, until such time as an underlying constitutional violation has been determined. See, e.g., Ricciuti v. New York City Transit Authority, 796 F.Supp. 84, 85-86 (S.D.N.Y. 1992) ("While the plaintiffs suggest that their discovery requests will not be as expansive as defendants assert, defendants note that bifurcation may also prevent a prolonged examination of government policy and custom before trial. Judging by the pleadings, such an examination could be a time-consuming and elaborate affair: plaintiffs recite numerous incidents highlighting the improper training of officers, two of which occurred in 1975. If the Court orders bifurcation and the first trial disposes of the claims against the municipalities, this exhaustive discovery would indeed be avoided.")(emphasis added). Masi v. City of New York, 1999 WL 688453 at *1 (S.D.N.Y. 1999) ("The economies to be achieved by limiting discovery to the incident in question and its sequelae are apparent, and have been set forth comprehensively by Judge Haight in Ricciuti, 796 F.Supp. at 86. I agree with him.") (emphasis added); Morales v. Irizarry, No. 95CIV.5068(AGS)(HBP), 1996 WL 609416, at *2 (S.D.N.Y. Oct. 22, 1996)  ("Notwithstanding plaintiff's insistence to the contrary, the issue of

municipal liability engages matters going well beyond whether plaintiff['s rights were violated by the individual defendants on the date alleged.] ("Moreover, it is possible that if the case is tried only on the issue of individual defendant liability, there may be no need to consider the issue of municipal liability regardless of the outcome of such a trial. If the verdict is in favor of the individual defendants, that ends the case; if the verdict is in favor of plaintiff, the City has a substantial incentive to settle the case. The case will be tried more quickly if **discovery** and trial are so limited.")(emphasis added).

DPS objects to this Interrogatory to the extent it is overly broad and unduly burdensome on the basis of the factors articulated above.

DPS objects to this Interrogatory on the basis that Plaintiffs have offered no basis or justification for pursuing municipal liability claims in this case. Instead, the claim is included to create settlement leverage and to impose upon Defendants inordinate discovery burdens, with the off-chance that such discovery might actually produce evidence of the claim asserted. But "discovery, like all matters of procedure, has ultimate and necessary boundaries." Price v. Leflore County Detention Center Public Trust, 2014 WL 3672874 (E.D.Okla.), 1 (E.D.Okla.,2014) (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947).

A district court is:

"'not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim.' McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir.2002) (unpublished). "'Discovery ... is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" Rivera v. DJO, LLC, No. CIV 11–1119 JB/RHS, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting Tottenham v. Trans World Gaming Corp., No. CIV 00–7697 WK, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)(Knapp, J.)). See Hardrick v. Legal Servs. Corp., 96 F .R.D. 617, 618 (D.D.C.1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation marks omitted). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted). *23 Courts have recognized that, while it is true that relevancy in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Elecs. Corp. v. Exzec, Inc., No. CIV 93–5041 BMM, 1998 WL 9181, at *2 (N.D.Ill. Jan. 5, 1998). Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2 (internal quotation marks omitted)."

Simon v. Taylor, 2015 WL 2225653 (D.N.M.), *22-23 (D.N.M. Apr. 30, 2015).

**INTERROGATORY NO. 19:** State whether the New Mexico State Police Department and/or the State of New Mexico has a procedure or system in place to train police officers in the safe deployment of Taser (ECD) devices. If so, provide a detailed description of the nature of such procedure or system, including the date on which the procedure or system was initiated, the entity who initiated the procedure, a description of any documents and forms and directives and memoranda which relate to or are employed in connection with such a procedure or system, and a detailed description of the manner in which the procedure or system functions.

**ANSWER:**

DPS objects to this Interrogatory as it is neither relevant to any party's claim or defense nor proportional to the needs of the case, considering (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the importance of the discovery in resolving the issues, and (4) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. Proc. 26(b)(1).

DPS objects that the requested information is not relevant to the claims or defenses at issue in this matter. Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1299 (D.N.M. 2010 ("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training. The clearly established law requires the exclusion of any evidence regarding the violation of SOPs and training, because such evidence is irrelevant to Fourth–Amendment inquiry.").

DPS objects as the information sought is not relevant to the alleged excessive use of force at issue in the present case. See, e.g., Jonas v. Bd. of Comm'rs of Luna Cty., 699 F. Supp. 2d 1284, 1290-91 (D.N.M. 2010) ("The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor test required to introduce 404(b) evidence. See Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir.2005) (holding that plaintiff failed to satisfy the first factor—that evidence of prior use of force was introduced for a proper purpose); Tanberg v. Sholtis, 401 F.3d 1151, 1167–68 (10th Cir.2005) (holding that plaintiffs failed to satisfy the second factor—that evidence of past use of force was relevant). In Chavez v. City of Albuquerque, the Tenth Circuit examined the admissibility of prior decisions of defendant Andrew Lehocky, a K–9 officer, to use his police service dog in cases which were unrelated to the plaintiff's claim. See 402 F.3d at 1046. The Tenth Circuit affirmed the decision of the Honorable William P. Johnson, United States District Judge for the District of New Mexico, to exclude evidence of "other incidents in which arrestees claimed [the defendant] used excessive force in deploying [the police service dog] Bart." Id. at 1046. The plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well as modus operandi and contended that the district court should admit the prior incidents under rule 404(b). See 402 F.3d at 1046. Concluding that the evidence was not offered for a proper purpose, and in upholding the district court's decision to exclude these prior

incidents, the Tenth Circuit stated and explained that:Although [the plaintiff] argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that [the K–9 officer's] use of [police service dog] constituted a "modus operandi," none of these alternative bases for introducing 404(b)-type evidence was implicated on the facts presented. There was no claim or defense suggesting that [the K–9 officer] accidentally or mistakenly used the police dog. Indeed, it seems clear that he made a deliberate, conscious decision to do so. Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding the defendant's identity.Id. (citations omitted). The Tenth Circuit also noted that the district court's conclusion "that such evidence was not relevant under the objective reasonableness standard of Graham v. Connor[, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ] ... is consistent with the decisions of several *1291 other federal appellate courts which have considered similar requests." 402 F.3d at 1047 n. 4.").

To establish municipal liability under § 1983, a plaintiff must first demonstrate, inter alia, that an officer committed an underlying constitutional violation. Saenz v. Lovington Mun. Sch. Dist., No. CIV 14-1005 JB/SMV, 2015 WL 2226021, at *19 (D.N.M. Apr. 30, 2015). Unless and until such a determination has been made, the burden of indulging onerous discovery that would seek discovery as to a vaguely described process inquired of here, and not relevant to the underlying alleged constitutional violations is notjustified.

Confronted with this threshold legal issue, that is yet to be determined in Plaintiffs' favor, and particularly under the new revisions to Rule 26, DPS respectfully submits that the Court, in the interest of proportionality, should stay discovery on Plaintiffs' municipal liability claim, until dispositive motions as to qualified immunity have been filed and adjudicated. This is in keeping with the nature of the doctrine of qualified immunity itself. Martin v. City of Albuquerque, No. CIV 14-1011 JB/GBW, 2015 WL 7803616, at *7 (D.N.M. Nov. 9, 2015) ("Once the qualified immunity defense has been raised, the Court must not let a plaintiff use discovery as a fishing expedition to flesh out the merits of his claim.").

Alternatively, DPS respectfully submits that the Court, in the interest of proportionality, should bifurcate Plaintiffs' municipal liability claim to structure discovery in a manner that appropriately phases the discovery burdens imposed upon public defendants, as here, until such time as an underlying constitutional violation has been determined. See, e.g., Ricciuti v. New York City Transit Authority, 796 F.Supp. 84, 85-86 (S.D.N.Y. 1992) ("While the plaintiffs suggest that their discovery requests will not be as expansive as defendants assert, defendants note that bifurcation may also prevent a prolonged examination of government policy and custom before trial. Judging by the pleadings, such an examination could be a time-consuming and elaborate affair: plaintiffs recite numerous incidents highlighting the improper training of officers, two of which occurred in 1975. If the Court orders bifurcation and the first trial disposes of the claims against the municipalities, **this exhaustive discovery would indeed be avoided.**")(emphasis added). Masi v. City of New York, 1999 WL 688453 at *1 (S.D.N.Y. 1999) ("The economies to be achieved by **limiting discovery** to the incident in question and its sequelae are apparent, and have been set forth comprehensively by Judge Haight in Ricciuti, 796 F.Supp. at 86. I agree with him.") (emphasis added); Morales v. Irizarry, No. 95CIV.5068(AGS)(HBP), 1996 WL 609416, at *2 (S.D.N.Y. Oct. 22, 1996) ("Notwithstanding plaintiff's insistence to the contrary, the issue of municipal liability engages matters going well beyond whether plaintiff['s rights were violated by

the individual defendants on the date alleged.] ("Moreover, it is possible that if the case is tried only on the issue of individual defendant liability, there may be no need to consider the issue of municipal liability regardless of the outcome of such a trial. If the verdict is in favor of the individual defendants, that ends the case; if the verdict is in favor of plaintiff, the City has a substantial incentive to settle the case. The case will be tried more quickly if **discovery** and trial are so limited.")(emphasis added).

DPS objects to this Interrogatory to the extent it is overly broad and unduly burdensome on the basis of the factors articulated above.

DPS objects to this Interrogatory on the basis that Plaintiffs have offered no basis or justification for pursuing municipal liability claims in this case. Instead, the claim is included to create settlement leverage and to impose upon Defendants inordinate discovery burdens, with the off-chance that such discovery might actually produce evidence of the claim asserted. But "discovery, like all matters of procedure, has ultimate and necessary boundaries." Price v. Leflore County Detention Center Public Trust, 2014 WL 3672874 (E.D.Okla.), 1 (E.D.Okla.,2014) (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947).

A district court is:

"'not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim.' McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir.2002) (unpublished). "'Discovery ... is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" Rivera v. DJO, LLC, No. CIV 11–1119 JB/RHS, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting Tottenham v. Trans World Gaming Corp., No. CIV 00–7697 WK, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)(Knapp, J.)). See Hardrick v. Legal Servs. Corp., 96 F .R.D. 617, 618 (D.D.C.1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation marks omitted). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted). *23 Courts have recognized that, while it is true that relevancy in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Elecs. Corp. v. Exzec, Inc., No. CIV 93–5041 BMM, 1998 WL 9181, at *2 (N.D.Ill. Jan. 5, 1998). Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2 (internal quotation marks omitted)."

Simon v. Taylor, 2015 WL 2225653 (D.N.M.), *22-23 (D.N.M. Apr. 30, 2015).

# VERIFICATION

STATE OF New Mexico )
                     ) ss.
COUNTY OF Santa Fe )

I, Veronica Tapia, being first duly sworn upon oath, deposes and states that I have examined and read **DEFENDANT NEW MEXICO STATE POLICE DEPARTMENT'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES.** As a paralegal for the New Mexico Department of Safety, I have assisted counsel in this case in gathering the documents and information provided in this document, and I verify that the documents and information referred have been provided by DPS, and are true to the best of my knowledge, although I do not have knowledge of the underlying events in this matter.

Subscribed and sworn before me this 11 day of December, 2015, by

Veronica Tapia.

_____
Notary Public

My commission expires:
3/6/16